## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

JEREMY RAYE DESHOTEL, ET AL.          CIVIL ACTION NO. 6:19-0373

VERSUS                                JUDGE JUNEAU

CARDCASH EXCHANGE, INC., ET AL.       MAG. JUDGE WHITEHURST

## REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Motion to Dismiss First Amended Complaint [Doc. 58] filed by the defendants Ashley N. Were and PayPal, Inc. (the "PayPal defendants"). The motion is opposed by the plaintiffs Jeremy and Courtney Deshotel [Doc. 71], and the defendants filed a Reply brief [Doc. 79]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be GRANTED IN PART AND DENIED IN PART AS MOOT.

## I.    FACTUAL BACKGROUND

The instant lawsuit arises from a business transaction between the plaintiffs, residents of Louisiana, and CardCash, a Delaware corporation domiciled in New Jersey. The plaintiffs and a third individual formed a limited liability company, named Giftopia, LLC ("Giftopia"), in December 2015 for the purpose of operating as a bulk gift card exchange. According to the original complaint, Giftopia would, through websites, forums and Facebook, make online purchases of unwanted

1

physical and digital gift cards issued by various service and merchandise vendors at discount.  Sellers would convey either a physical gift card or an electronic or digital gift card with full or partial balance remaining to Giftopia.

Plaintiffs allege that they began a business relationship with defendant CardCash Exchange, Inc. ("CardCash") in approximately December, 2015, which lasted until April 2016, during which time Giftopia sold the gift cards they had procured to CardCash.  Per the conditions on the CardCash website, purchasers of such gift cards had 45 days from delivery to complain about deficiencies in the credit balance programed into the gift cards or credited to digital gift cards sold by CardCash.  Jeremy Deshotel signed a terms and conditions agreement with CardCash whereby he agreed that if any purchaser from CardCash complained within 45 days after the transaction with CardCash, and CardCash refunded, that Giftopia would reimburse CardCash.

At the time of these transactions with CardCash, the plaintiffs resided in Scott, Louisiana, and operated this part-time business from the computers in their home. Also at that time, plaintiff Jeremy Deshotel was a Regional Vice President with Primerica.

The transfer of funds for the sale of gift cards by Giftopia to CardCash was effected by CardCash initially via ACH and wire transfers, and subsequently through PayPal.  Plaintiffs allege that normally there was a one or two day turn around

2

between Giftopia's sending of gift cards to CardCash and payment initiated by CardCash.

The plaintiffs allege that Giftopia's account manager with CardCash, Joseph Blaustein ("Blaustein"), advised the plaintiffs that CardCash would buy as many gift cards as the plaintiffs could procure, and that other vendors of CardCash had made millions of dollars selling gift cards to CardCash. Based on this information, during the last week of April 2016, Giftopia began a purchasing campaign to procure and sell to CardCash as many gift cards as possible. Giftopia alleges that it used all the available assets of its members to purchase a large quantity of gift cards, with a total face value of approximately $60,000.00. Jeremy subsequently examined Giftopia's CardCash account online and could see that CardCash's payment was not being processed as expeditiously as in the past. At some point thereafter, Blaustein advised the plaintiffs that CardCash would not pay the $40,000.00 due to Giftopia for this substantial transaction for digital gift cards, because CardCash "... had enough of them." The Giftopia members decided to cease conducting business with CardCash at this point.

Plaintiffs allege that in early May 2016, Jeremy received an email from PayPal advising that there was an issue with his account. Plaintiffs allege that prior to this time, Jeremy had approximately $12,000.00 in credit in his PayPal account. Upon logging in, Jeremy found a negative balance of $68,000.00. There were no details

explaining what the issue was at that time, but the plaintiffs allege that Jeremy's PayPal account was used only to receive payments from CardCash.  Jeremy alleges that he attempted to contact Blaustein, and subsequently received an email response from the CardCash Loss Prevention Manager, Mollie Berger.  Ms. Berger indicated there was a $3,000.00 to $5,000.00 deficiency in gift cards previously received from Giftopia.  Plaintiffs allege that Berger admitted at that time that she had told PayPal that CardCash had not received any merchandise from Giftopia as a precautionary measure, which plaintiffs allege is not true.

Plaintiffs allege that communications with CardCash continued for approximately nineteen (19) days, during which time the purported amount of Giftopia's gift card deficiency steadily increased.  Plaintiffs allege that Giftopia was never advised of which cards were deficient and in what amounts.  Jeremy's last communication with CardCash was May 24, 2016, at which time the CardCash Loss Prevention Manager agreed to send Jeremy a list of cards with a deficiency to enable Giftopia to seek reimbursement from their individual vendors.  At that time, Giftopia agreed to send valid gift cards to credit against the negative balance and to pay $5,000.00 to $7,500.00 to CardCash on the 15th of each month.  CardCash agreed to take steps to unfreeze Jeremy's PayPal account to enable Giftopia to again buy and sell gift cards to raise funds for the deficiency.  However, plaintiffs allege that CardCash never sent the list of deficient gift cards to the plaintiffs.

Plaintiffs allege that during this same time frame, Jeremy also spoke via telephone with a female who identified herself as an investigator for PayPal. Plaintiffs allege that Jeremy explained to the PayPal investigator how Giftopia and CardCash did business – and specifically, how gift cards that Giftopia had procured were sent to CardCash, which then paid Giftopia after receipt of the cards – however, the investigator accused Jeremy of lying, asserting that no one in business online sends merchandise to the buyer without being paid in advance, and that CardCash had never received any gift cards from Giftopia after having paid for them. Jeremy directed the PayPal investigator to examine CardCash's website, which clearly in its terms and conditions required such a procedure for those wishing to do business with CardCash.

On June 24, 2016, plaintiffs entered into a lease/purchase agreement for a new home in Youngsville, Louisiana. They terminated utility service at their former residence in Scott, Louisiana on July 4, 2016.

Around July 13, 2016, defendant Ashley Weres, a PayPal investigator, having completed an investigation against the plaintiffs, communicated with officers of the Lafayette Police Department. Upon learning that the plaintiffs' transactions with CardCash had transpired when the plaintiffs resided in Scott, the Lafayette Police Department referred the PayPal investigator to the Scott Police Department. Defendant Caleb Lege of the Scott Police Department prepared affidavits and arrest

warrants for both plaintiffs, based on what the plaintiffs allege is false information provided by CardCash and relayed by PayPal.  Lege's affidavit alleged that "(b)etween the dates of February 10, 2016, and April 14, 2016, ABC Gift Cards sent $80,000.00 to purchase gift cards from the Giftopia, LLC using PayPal's financial services."  The affidavit states that after ABC did not receive the "merchandise" purchased from Giftopia, a complaint was filed with PayPal.  The affidavit additionally states that PayPal was unable to contact the plaintiffs, despite the fact that Jeremy's telephone number and email address were unchanged, and further despite the fact that Jeremy alleges he had communicated with a PayPal investigator for approximately 19 days in May 2016.  Plaintiffs allege that Lege's affidavit fails to indicate the conversations that Jeremy had with PayPal investigators.

On September 27, 2016, arrest warrants for Jeremy and Courtney were issued by Judge Duplantier of the 15th Judicial District Court in Lafayette Parish.  The charges listed in the warrant were Illegal Transmission of Monetary Funds and Money Laundering, allegedly committed on or about February 10, 2016.  On the same date, plaintiffs allege that the same information used to prepare the arrest warrants was used to prepare an affidavit in support of a search warrant for the search of plaintiffs' new home in Youngsville.

The search warrant was executed on September 28, 2016.  During the execution of the search and arrest warrants, defendant Lege, assisted by two

6

detectives, seized items of personal property belonging to the plaintiffs, including but not limited to anabolic steroids, hypodermic syringes, and firearms. On the same date, two additional search warrants were obtained for the search of the plaintiffs' vehicles. Both plaintiffs were arrested at their residence in Youngsville and transported to the Lafayette Parish Correctional Center for booking. In addition to the charges stated in his arrest warrant, Jeremy was arrested on charges of: (1) Possession of Schedule III Narcotics (anabolic steroids), (2) Possession of Drug Paraphernalia (hypodermic syringes), and (3) Illegal Carrying of Weapons. Courtney was arrested on charges of: (1) Sale/Distribution/Possession of Legend Drugs, and (2) Possession of Schedule II Narcotic.

After his arrest, Jeremy was suspended from Primerica. Plaintiffs also allege that as the result of Jeremy's loss of income and inability to obtain comparable employment, the plaintiffs could not meet their financial obligations, and they were forced to voluntarily surrendered the residence, losing their $30,000.00 down payment. CardCash filed a lawsuit against the plaintiffs in the Superior Court of New Jersey, Ocean County, and obtained a default judgment against them in the amount of $58,969.07 on December 12, 2017.

On May 4, 2018, the illegal transmission and money laundering charges against both plaintiffs were dropped by the Lafayette District Attorney's office. On

November 13, 2018, Jeremy pled guilty to the charge of Possession of Drug Paraphernalia, and the charge of Possession of Schedule III Drugs was dismissed.

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed suit against the Scott Police Department, Caleb David Lege, CardCash, PayPal, and Ashley Were on March 23, 2019.   In their original Complaint, the plaintiffs allege the following claims:

- Detrimental reliance against CardCash only, under Louisiana law;

- False imprisonment against all parties under Louisiana law;

- Malicious prosecution against CardCash under New Jersey law;

- Malicious prosecution against Ashley Were and PayPal under Arizona law.

Various motions to dismiss were filed before the plaintiffs sought leave to amend their complaint.  The Court allowed the amendment and denied all motions to dismiss as premature, reserving unto defendants their rights to re-file their motions once the Amended Complaint was filed.  The Amended Complaint was filed on August 22, 2019 [Doc. 57], and several motions to dismiss were filed thereafter, including the instant motion pending before the Court at this time.

In their Amended Complaint, the plaintiffs amend their claims as follows:

- Promissory estoppel or detrimental reliance against CardCash only, under either Louisiana or New Jersey law;

8

- Malicious prosecution against all parties under 43 U.S.C. § 1983 (Fourth Amendment);

- Malicious prosecution, apparently against all parties, under New Jersey law;

- Malicious prosecution, apparently against all parties, under Louisiana law;

- Plaintiffs include an allegation that under Louisiana's choice of law provisions, New Jersey law is "primarily applicable" to all claims alleged against CardCash, while "the law of the State of Arizona may be applicable" to all claims alleged against Ashley Were;

- The plaintiffs also claim they are entitled to punitive damages for all malicious prosecution claims.

## III.    LAW AND ANALYSIS

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v.*

*Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

## B. Analysis

### 1. False Imprisonment

As an initial matter, the undersigned notes that the plaintiffs have abandoned their false imprisonment claims, as no claim for false imprisonment is alleged in the Amended Complaint. Indeed, plaintiffs acknowledge in their response to the motion to dismiss that they are not pursuing a claim for false imprisonment against any party. Considering the foregoing, the motion to dismiss the plaintiffs' false

imprisonment claim is DENIED AS MOOT, as no such claim is pending at this time.[1]

## 2. Malicious Prosecution

The plaintiffs allege several claims of malicious prosecution, against various defendants, and under different bodies of law.  It is unclear whether the plaintiffs allege their malicious prosecution claim against PayPal under Louisiana, New Jersey, or Arizona law.  Regardless, the plaintiffs' fail to state a claim under any of these bodies of law.  Under Louisiana law, [a]ctions for malicious prosecution are disfavored and a clear case must be established." *Graham v. Foret*, 818 F. Supp. 175, 177 (E.D. La. 1992), *citing Jones v. Soileau,* 448 So. 2d 1268 (La. 1984); *Johnson v. Pearce,* 313 So. 2d 812 (La. 1975).  To state a claim for malicious

---

[1] In any event, any claim for false imprisonment would be time-barred, as argued by the defendants, regardless of whether Louisiana, Arizona, or New Jersey law applies to the claim.  All three states apply a one-year prescriptive period to claims for false imprisonment or false arrest, which accrues on the date of the arrest. *See Hobson v. Prudhomme*, 2019 U.S. Dist. LEXIS 4297, at *10 (W.D. La. Jan. 8, 2019) ("In Louisiana, delictual actions, including claims for . . . false imprisonment and the like, are subject to a liberative prescription period of one year."); *Thomas v. Gryder*, 2018 U.S. Dist. LEXIS 148743, at *7 (M.D. La. Aug. 30, 2018) ("[T]he one-year period in which Plaintiff was required to bring his state law claims began to run on the date Plaintiff was allegedly 'falsely imprisoned.'"); *Tassin v. Jones*, 2001 U.S. Dist. LEXIS 13267, at *4 (E.D. La. Aug. 17, 2001) ("Louisiana provides a one year prescriptive period for torts such as false arrest beginning on the date of the arrest.").  *See also* Ariz. Rev. Stat. § 12-541; *see also Rizzo v. City of Phx.*, 2017 U.S. Dist. LEXIS 118749, at *26 (D. Ariz. July 28, 2017) ("[U]nder Arizona law, a claim for false imprisonment must be filed within "one year after the cause of action accrues. . . . The claim accrues upon arrest."); *Waselik v. Twp. of Spara*, 2017 U.S. Dist. LEXIS 76646, at *16 n.3 (D.N.J. May 18, 2017).

Here, plaintiffs allege there were arrested on September 28, 2016.  Thus, at the latest, plaintiffs had one year from September 28, 2016, or until September 28, 2017, to sue for false imprisonment under Louisiana, Arizona, or New Jersey law. But they did not sue until March 23, 2019. *Doc. 1*. Therefore, to the extent they allege a false imprisonment claim, it is time-barred.

prosecution under Louisiana law, the plaintiff must prove the following six elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) a bona fide termination of the original proceeding in favor of the present plaintiff; (4) the absence of probable cause for the original proceeding; (5) malice on the part of the present defendant in the original proceeding; and (6) damage to the present plaintiff. *Jones,* 448 So. 2d at 1271.[2]

---

[2] To state a claim for malicious prosecution under New Jersey law, the plaintiff must prove: "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *See LoBiondo v. Schwartz*, 970 A.2d 1007, 1023, 199 N.J. 62, 91 (N.J. 2009) ("Our longstanding reluctance to permit parties to utilize these causes of action springs from our recognition that they carry with them the significant potential for abuse."). Defendants argue the plaintiffs in this matter fail to allege facts against the PayPal defendants sufficient to establish: (1) a criminal action was instituted by the PayPal defendants against plaintiffs; and (2) the action was motivated by malice. Also, as to Jeremy Deshotels, the First Amended Complaint fails to plead element that the action terminated favorably to Jeremy.

To state a claim for malicious prosecution under Arizona law, the plaintiff must prove the following elements: (1) a criminal prosecution, (2) that terminates in favor of plaintiff, (3) which was initiated with defendants as prosecutors, (4) actuated by malice, (5) without probable cause and (6) causing damages. *Allen*, 2009 Ariz. App. Unpub. LEXIS 952, at *14, *quoting Cullison v. City of Peoria*, 120 Ariz. 165, 169, 584 P.2d 1156, 1160 (1978). Here, defendants argue the plaintiffs fail to allege facts against the PayPal defendants sufficient to establish that they: (3) initiated a criminal prosecution against plaintiffs as prosecutors; and (4) did so with malice. Also, as to Jeremy Deshotels, defendants argue the Amended Complaint fails to plead element that the criminal prosecution terminated in favor of Jeremy.

For all of the reasons that the plaintiffs' malicious prosecution fail to state a claim under Louisiana law, the plaintiffs' claim of malicious prosecution under New Jersey and Arizona law must fail. Reference is made to the portion of this Ruling discussion application of Louisiana law; the same facts and analysis is applicable to the claims under New Jersey and Arizona law.

Defendants argue the plaintiffs' Amended Complaint fails to plead the necessary facts against the PayPal defendants to establish the following elements of a malicious prosecution claim: (2) its legal causation by the PayPal defendants in the original proceeding; and (5) malice on the part of the PayPal defendants in the original proceeding. Additionally, defendants argue the Amended Complaint fails to establish the element of a bona fide termination of the original proceeding in favor of Jeremy.  The undersigned agrees.

The jurisprudence is clear that a private individual or entity who reports suspected criminal activity to the police is not liable for malicious prosecution under Louisiana law if law enforcement's independent actions and investigation break the chain of causation between the citizen's complaint and the resulting arrest.  *See, e.g., Adams v. Harrah's Bossier City Inv. Co.,* 948 So. 2d 317, 320–22 (La. App. 2nd Cir. 1/10/07), (finding that although the defendants reported suspected theft to the police and viewed security footage alongside the police, the police's viewing of the security footage was a sufficiently independent investigation to break the chain of causation because the defendants' involvement "d[id] not rise to such a level as to prevent the police investigation from being independent of [defendant's] own suspicions"). Indeed, Louisiana courts have found causation lacking in malicious prosecution cases when the defendant reports facts to the authorities in good faith, and an independent decision is made to bring criminal charges. *See Williams v. Higbee*

*Lancoms, LP*, NO. 15-2486 SECTION "L" (5), 2016 U.S. Dist. LEXIS 24426, at *12 (E.D. La. Feb. 26, 2016) ("Here, Mr. Dennis made a statement to the Jefferson police in good faith and, as such, there is no case for malicious prosecution."); *Duncan*, 2009 U.S. Dist. LEXIS 140894, at *9 ("This charge was the result of Officer D'Amato's intervening independent investigation. 'As such, the independent investigation by the police breaks [the] legal causation' required for a malicious prosecution claim"); *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 690 n.20 (La. 2006) (finding that the restaurant was not liable for malicious prosecution when the police conducted an independent investigation into counterfeit money); *Banks v. Brookshire Bros.*, 640 So. 2d 680, 682 (La. App. 3 Cir. 6/1/94) (holding defendants were not liable for malicious prosecution based on merely reporting their observations to police officers, who detained the plaintiff, conducted their own observations, and arrested him; "any inadequacies in the investigation [we]re not the responsibility of the defendants"); *Republic Fire & Cas. Ins. Co. v. Charles*, 2018 U.S. Dist. LEXIS 2152, at *13-14 (E.D. La. Jan. 4, 2018) (finding that the plaintiff failed to state a claim for malicious prosecution against the defendant where the only supporting allegations were that the defendant provided information to the authorities, which then led to the arrest warrant being issued against the plaintiff, and thereafter, the charges against him were dismissed). *See also Bohn v. Miller*, 189 So. 3d 592, 598 (La. App. 3 Cir. 4/6/16) (court found plaintiff failed to satisfy

14

element of causation on malicious prosecution claim against the defendant — a private individual — who reported suspected crime to police because police obtained the information from other sources, executed an arrest warrant, and proceeded to charge the plaintiff with the crime; defendant's "involvement ceased after he made his report to the police.").

Reference to the Amended Complaint shows that the plaintiffs allege that PayPal conducted an investigation after being provided allegedly "false" and/or "stale" information by CardCash, and then relayed that information to the Scott Police Department, which allegedly used the information in applying for and obtaining the arrest warrant and search warrants in question. The plaintiffs appear to allege that PayPal simply reported the information it received from CardCash to the Scott authorities, and may have left information out when relaying the information to the Scott defendants, yet there is no allegation in the Amended Complaint that the PayPal defendants did so in bad faith. After a review of the record, the undersigned finds there are no facts alleged in the Amended Complaint that show that the PayPal defendants intentionally falsified or withheld information.

Furthermore, the plaintiffs do not state a claim for malicious prosecution against the PayPal defendants because the independent actions and investigations of defendant Lege, the Scott Police Department, and Judge Duplantier broke the chain of causation between the PayPal defendants' alleged complaint to the police and

plaintiffs' arrests.  The arrest warrants in this matter were applied for by Detective Lege of the City of Scott and subsequently issued by Judge Duplantier of the 15th Judicial District Court, a neutral third party.  Thus, the PayPal defendants did not arrest or issue the arrest warrants for plaintiffs' arrest.  The City of Scott, acting through its investigators, selected the charges to be filed against the plaintiffs, based upon their own findings and investigation.  Additionally, the City of Scott Police Department obtained information from multiple sources – including CardCash and PayPal -- regarding the plaintiffs' activities and conducted its own independent investigation into these activities before proceeding to apply for warrants and later to arrest the plaintiffs.  Lege also attested that the Scott Police Department considered Capital One bank statements and PayPal account transactions to support affidavits for the arrest warrants for plaintiffs' arrests.  Finally, a neutral judge -- Judge Duplantier -- made the independent decision to issue the search warrants for plaintiffs' home and vehicles based on his independent consideration of the evidence.  Considering the foregoing, after a review of the allegations and evidence presented thus far, the Court finds the PayPal defendants' involvement ceased after reporting plaintiffs' activities to the police, that is, the actions of CardCash, Lege, the Scott Police Department, and Judge Duplantier sufficiently broke the chain of causation between the PayPal defendants' actions and plaintiffs' arrests.

Additionally, the plaintiffs fail to allege that the PayPal defendants acted with malice.  Under Louisiana law, "[m]alice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to 'tie up the mouths' of witnesses in another action, or as an experiment to discover who might have committed the crime." *Williams v. Higbee Lancoms, LP*, 2016 U.S. Dist. LEXIS 24426, at *13 (E.D. La. Feb. 26, 2016).  Here, the First Amended Complaint lacks any of the foregoing allegations as to the PayPal defendants and does not state that the PayPal defendants acted with malice or knew that the information reported to the police was allegedly false. The First Amended Complaint also fails to identify any motive on the part of the PayPal defendants for reporting allegedly false allegations.

For the foregoing reasons, the undersigned finds that the plaintiffs' claims for malicious prosecution against the PayPal defendants, under either Louisiana, New Jersey, or Arizona law, fail to state a claim, and dismissal of these claims is appropriate.

### 3.  Civil Rights Claims

It appears the plaintiffs have included a Section 1983 claim against all defendants – including the PayPal defendants – for malicious prosecution in their Amended Complaint.  The allegations fail to state a claim, however, because Section

1983 claims can only be brought against defendants acting under color of state law. *See James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008); *see also Bui Phu Xuan v. Fort Worth Star-Telegram*, 277 F. App'x 452, 454 (5th Cir. 2008) ("Put another way, acts of private parties, such as the Star-Telegram, 'even if wrongful, do not fall under the ambit of the' Constitution."); *Owens v. Stalder*, 2012 U.S. Dist. LEXIS 68008, at *21-22 (W.D. La. Apr. 16, 2012) ("To prove false imprisonment under Section 1983, the plaintiff must show that the defendant, while acting under color of law, deprived him of a right secured by the Constitution and laws of the United States.") (emphasis added); *Donley v. Hudson's Salvage, L.L.C.*, 2011 U.S. Dist. LEXIS 136908, at *47 (E.D. La. Nov. 29, 2011) ("Donley must show both a violation of a right secured by the Constitution or laws of the United States and that the deprivation was committed by a person acting under color of state law.").

Generally, private individuals are not considered to act under the color of state law. *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). The only basis for which private action may be deemed state action is when the defendant's conduct is "fairly attributable to the State." *Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir. 2004), *quoting Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). To establish fair attribution, the plaintiff must show: (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that

the party charged with the deprivation may fairly be said to be a state actor. *Id., citing Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988). The Fifth Circuit has held that "a private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority." *Daniel*, 839 F.2d at 1130. Moreover, police reliance in making an arrest on information given by a private party does not make the private party a state actor. *Id., citing Hernandez v. Schwegmann Brothers Giant Supermarkets, Inc.,* 673 F.2d 771, 772 (5th Cir. 1982) (emphasis added). Indeed, "[t]he execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action." *Id.* (emphasis added).

Here, the plaintiffs do not make any specific factual allegations that the PayPal defendants "acted under color of state law," however, the claim was included in the original Complaint and the Amended Complaint. To the extent that such claim remains pending, the undersigned finds the plaintiffs cannot state a claim for relief against the PayPal defendants on their Section 1983 claim, because the PayPal defendants are not state actors for the purposes of this claim, and are not alleged to have been acting as state actors. Accordingly, any Section 1983 claim against the PayPal defendants should be dismissed.

### 4. Punitive damages

Plaintiffs contend that they are entitled to recover punitive damages on their claims against the PayPal defendants. It is unclear to this Court what law the plaintiffs allege governs such a claim. In the Amended Complaint, the claim for punitive damages arises under the plaintiffs' claim for malicious prosecution under Louisiana law. In another section of the Amended Complaint, however, the plaintiffs appear to allege that the law of the State of Arizona "may be applicable" to all of the plaintiffs' claim against the PayPal defendants. Regardless of whether Louisiana or Arizona law applies to the plaintiffs' claim for punitive damages, the undersigned finds the plaintiffs fail to state a claim for punitive damages under the facts of this case under either body of law.

As an initial matter, under Louisiana law, "punitive damages cannot be pleaded as an independent cause of action but rather must be requested in conjunction with a cognizable cause of action." *Tajonera v. Black Elk Energy Offshore Operations, L.L.C.*, 16 F. Supp. 3d 755, 765 (E.D. La. 2014) (emphasis added). As such, "before a plaintiff can recover punitive damages, he or she must be entitled to legal or equitable relief." *Id.* at 766 (emphasis added). Here, this Court has already concluded the plaintiffs fail to state a claim for malicious prosecution, therefore, any claim for punitive damages in connection with that claim must fail.

Furthermore, Louisiana Civil Code Article 3546 provides that "[p]unitive damages may not be awarded by a court of this state unless authorized:

(1) By the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or

(2) By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled.

La. Civ. Code art. 3546.

In other words, punitive damages may only be awarded "if such damages are authorized under the law of the state or states with *two or more of the following contacts*: (a) place of the injurious conduct; (b) place of the resulting injury; and (c) place of the defendant's domicile." *Arabie v. CITGO Petrol. Corp.*, 89 So. 3d 307, 326-27 (La. 3/13/12) (emphasis added). Therefore, Article 3546 requires that two of these three contacts must be with Arizona for plaintiffs to recover punitive damages under Arizona law. Here, the pleadings show that two of these contacts are clearly in Louisiana, precluding the application of Arizona law.

Considering the foregoing, the plaintiffs fail to state a claim for punitive damages in connection with their malicious prosecution claim against the PayPal defendants, and this claim must be dismissed.

## IV.    CONCLUSION

Considering the foregoing,

**IT IS RECOMMENDED** that the Motion to Dismiss First Amended Complaint [Doc. 58] be GRANTED IN PART AND DENIED IN PART. IT IS RECOMMENDED that defendants' motion to dismiss the plaintiffs' false imprisonment claim be DENIED AS MOOT, as no such claim is pending at this time.    IT IS FURTHER RECOMMENDED that defendants' motion to dismiss all malicious prosecution and civil rights claims – under Louisiana, New Jersey, or Arizona law – is GRANTED, and that the plaintiffs' claims for punitive damages be GRANTED.  With the granting of this motion, the PayPal defendants would be dismissed as a defendant in this matter.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized

by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

  **THUS DONE AND SIGNED** this 2nd day of April, 2020 at Lafayette, Louisiana.

                   **CAROL B. WHITEHURST**
                   **UNITED STATES MAGISTRATE JUDGE**