## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

JEREMY RAYE DESHOTEL, ET AL.          CIVIL ACTION NO. 6:19-0373

VERSUS                                JUDGE JUNEAU

CARDCASH EXCHANGE, INC., ET AL.       MAG. JUDGE WHITEHURST

### REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Re-Urged Motion to Dismiss for Failure to State a Claim [Doc. 66] filed by the defendants the City of Scott and Sergeant Caleb David Lege, individually and in his official capacity as a police officer for the City of Scott (the "Scott defendants"). The motion is opposed by the plaintiffs, Jeremy and Courtney Deshotel [Doc. 86], and the defendants filed a Reply brief [Doc. 94]. For the following reasons, it is RECOMMENDED that the Motion to Dismiss be GRANTED IN PART AND DENIED IN PART.

### I.    FACTUAL BACKGROUND

The instant lawsuit arises from a business transaction between the plaintiffs, residents of Louisiana, and CardCash, a Delaware corporation domiciled in New Jersey. The plaintiffs and a third individual formed a limited liability company named Giftopia, LLC ("Giftopia") in December 2015, for the purpose of operating as a bulk gift card exchange. According to the original complaint, Giftopia would,

through websites, forums and Facebook, make online purchases of unwanted physical and digital gift cards issued by various service and merchandise vendors at discount. Sellers would convey either a physical gift card or an electronic or digital gift card with full or partial balance remaining to Giftopia.

Plaintiffs allege that they began a business relationship with defendant CardCash Exchange, Inc. ("CardCash") in approximately December, 2015, which lasted until April 2016, during which time Giftopia sold the gift cards they had procured to CardCash. Per the conditions on the CardCash website, purchasers of such gift cards had 45 days from delivery to complain about deficiencies in the credit balance programed into the gift cards or credited to digital gift cards sold by CardCash. Jeremy Deshotel signed a terms and conditions agreement with CardCash whereby he agreed that if any purchaser from CardCash complained within 45 days after the transaction with CardCash, and CardCash refunded, that Giftopia would reimburse CardCash.

At the time of these transactions with CardCash, the plaintiffs resided in Scott, Louisiana, and operated this part-time business from the computers in their home. Also at that time, plaintiff Jeremy Deshotel was a Regional Vice-President with Primerica.

The transfer of funds for the sale of gift cards by Giftopia to CardCash was effected by CardCash initially via ACH and wire transfers, and subsequently through

PayPal. Plaintiffs allege that normally, there was a one or two day turn around between Giftopia's sending of gift cards to CardCash and payment initiated by CardCash.

The plaintiffs allege that Giftopia's account manager with CardCash, Joseph Blaustein ("Blaustein"), advised the plaintiffs that CardCash would buy as many gift cards as the plaintiffs could procure, and that other vendors of CardCash had made millions of dollars selling gift cards to CardCash. Based on this information, during the last week of April 2016, Giftopia began a purchasing campaign to procure and sell to CardCash as many gift cards as possible. Giftopia alleges that it used all the available assets of its members to purchase a large quantity of gift cards, with a total face value of approximately $60,000.00. Jeremy subsequently examined Giftopia's CardCash account online and could see that CardCash's payment was not being processed as expeditiously as in the past. At some point thereafter, Blaustein advised the plaintiffs that CardCash would not pay the $40,000.00 due to Giftopia for this substantial transaction for digital gift cards, because CardCash "... had enough of them." The Giftopia members decided to cease conducting business with CardCash at this point.

Plaintiffs allege that in early May 2016, Jeremy received an email from PayPal advising that there was an issue with his account. Plaintiffs allege that prior to this time, Jeremy had approximately $12,000.00 in credit in his PayPal account. Upon

logging in, Jeremy found a negative balance of $68,000.00. There were no details explaining what the issue was at that time, but the plaintiffs allege that Jeremy's PayPal account was used only to receive payments from CardCash. Jeremy alleges that he attempted to contact Blaustein, and subsequently received an email response from the CardCash Loss Prevention Manager, Mollie Berger. Ms. Berger indicated there was a $3,000.00 to $5,000.00 deficiency in gift cards previously received from Giftopia. Plaintiffs allege that Berger admitted at that time that she had told PayPal that CardCash had not received any merchandise from Giftopia as a precautionary measure, which plaintiffs allege is not true.

Plaintiffs allege that communications with CardCash continued for approximately nineteen (19) days, during which time the purported amount of Giftopia's gift card deficiency steadily increased. Plaintiffs allege that Giftopia was never advised of which cards were deficient and in what amounts. Jeremy's last communication with CardCash was May 24, 2016, at which time the CardCash Loss Prevention Manager agreed to send Jeremy a list of cards with a deficiency to enable Giftopia to seek reimbursement from their individual vendors. At that time, Giftopia agreed to send valid gift cards to credit against the negative balance and to pay $5,000.00 to $7,500.00 to CardCash on the 15th of each month. CardCash agreed to take steps to unfreeze Jeremy's PayPal account to enable Giftopia to again buy and

4

sell gift cards to raise funds for the deficiency.  However, plaintiffs allege that CardCash never sent the list of deficient gift cards to the plaintiffs.

Plaintiffs allege that during this same time frame, Jeremy also spoke via telephone with a female who identified herself as an investigator for PayPal. Plaintiffs allege that Jeremy explained to the PayPal investigator how Giftopia and CardCash did business – and specifically, how gift cards that Giftopia had procured were sent to CardCash, which then paid Giftopia after receipt of the cards – however, the investigator accused Jeremy of lying, asserting that no one in business online sends merchandise to the buyer without being paid in advance, and that CardCash had never received any gift cards from Giftopia after having paid for them. Jeremy directed the PayPal investigator to examine CardCash's website, which clearly in its terms and conditions required such a procedure for those wishing to do business with CardCash.

On June 24, 2016, plaintiffs entered into a lease/purchase agreement for a new home in Youngsville, Louisiana.  They terminated utility service at their former residence in Scott, Louisiana on July 4, 2016.

Around July 13, 2016, defendant Ashley Weres, a PayPal investigator, having completed an investigation against the plaintiffs, communicated with officers of the Lafayette Police Department.  Upon learning that the plaintiffs' transactions with CardCash had transpired when the plaintiffs resided in Scott, the Lafayette Police

5

Department referred the PayPal investigator to the Scott Police Department. Defendant Caleb Lege of the Scott Police Department prepared affidavits and arrest warrants for both plaintiffs, based on what the plaintiffs allege is false information provided by CardCash and relayed by PayPal. Lege's affidavit alleged that "(b)etween the dates of February 10, 2016, and April 14, 2016, ABC Gift Cards sent $80,000.00 to purchase gift cards from the Giftopia, LLC using PayPal's financial services." The affidavit states that after ABC did not receive the "merchandise" purchased from Giftopia, a complaint was filed with PayPal. The affidavit additionally states that PayPal was unable to contact the plaintiffs, despite the fact that Jeremy's telephone number and email address were unchanged, and further despite the fact that Jeremy alleges he had communicated with a PayPal investigator for approximately 19 days in May 2016. Plaintiffs allege that Lege's affidavit fails to indicate the conversations that Jeremy had with PayPal investigators.

On September 27, 2016, arrest warrants for Jeremy and Courtney were issued by Judge Duplantier of the 15th Judicial District Court in Lafayette Parish. The charges listed in the warrant were Illegal Transmission of Monetary Funds and Money Laundering, allegedly committed on or about February 10, 2016. On the same date, plaintiffs allege that the same information used to prepare the arrest warrants was used to prepare an affidavit in support of a search warrant for the search of plaintiffs' new home in Youngsville.

The search warrant was executed on September 28, 2016. During the execution of the search and arrest warrants, defendant Lege, assisted by two detectives, seized items of personal property belonging to the plaintiffs, including but not limited to anabolic steroids, hypodermic syringes, and firearms. On the same date, two additional search warrants were obtained for the search of the plaintiffs' vehicles. Both plaintiffs were arrested at their residence in Youngsville and transported to the Lafayette Parish Correctional Center for booking. In addition to the charges stated in his arrest warrant, Jeremy was arrested on charges of: (1) Possession of Schedule III Narcotics (anabolic steroids), (2) Possession of Drug Paraphernalia (hypodermic syringes), and (3) Illegal Carrying of Weapons. Courtney was arrested on charges of: (1) Sale/Distribution/Possession of Legend Drugs, and (2) Possession of Schedule II Narcotic.

After his arrest, Jeremy was suspended from Primerica. Plaintiffs also allege that as the result of Jeremy's loss of income and inability to obtain comparable employment, the plaintiffs could not meet their financial obligations, and they were forced to voluntarily surrendered the residence, losing their $30,000.00 down payment. CardCash filed a lawsuit against the plaintiffs in the Superior Court of New Jersey, Ocean County, and obtained a default judgment against them in the amount of $58,969.07 on December 12, 2017.

On May 4, 2018, the illegal transmission and money laundering charges against both plaintiffs were dropped by the Lafayette District Attorney's office. On November 13, 2018, Jeremy pled guilty to the charge of Possession of Drug Paraphernalia, and the charge of Possession of Schedule III Drugs was dismissed. On December 3, 2018, the drug charges against Courtney Deshotel were dismissed.

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed suit against the Scott Police Department, Caleb David Lege, CardCash, PayPal, and Ashley Were on March 23, 2019. In their original Complaint, the plaintiffs allege the following claims:

- Detrimental reliance against CardCash only, under Louisiana law;

- Malicious prosecution against all defendants under 43 U.S.C. §1983.

- False imprisonment and malicious prosecution against all defendants under Louisiana law;

- Malicious prosecution against CardCash under New Jersey law;

- Malicious prosecution against Ashley Were and PayPal under Arizona law.

Various motions to dismiss were filed before the plaintiffs sought leave to amend their complaint. The Court allowed the amendment and denied all motions to dismiss as premature, reserving unto defendants their rights to re-file their motions once the Amended Complaint was filed. The Amended Complaint was filed on

August 22, 2019 [Doc. 57], and several motions to dismiss were filed thereafter, including the instant motion pending before the Court at this time.

In their Amended Complaint, the plaintiffs amend their claims as follows:

- Promissory estoppel or detrimental reliance against CardCash only, under either Louisiana or New Jersey law;

- Malicious prosecution against all defendants under 43 U.S.C. §1983 (Fourth Amendment);

- Malicious prosecution, apparently against all defendants, under New Jersey law;

- Malicious prosecution, apparently against all defendants, under Louisiana law;

- Plaintiffs include an allegation that under Louisiana's choice of law provisions, New Jersey law is "primarily applicable" to all claims alleged against CardCash, while "the law of the State of Arizona may be applicable" to all claims alleged against Ashley Were;

- The plaintiffs also claim they are entitled to punitive damages for all malicious prosecution claims.

### III.    LAW AND ANALYSIS

**A. Legal Standard**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

## B. Analysis

### 1. False Imprisonment

As an initial matter, the undersigned notes that, to the extent the plaintiffs alleged claims in original Complaint for false arrest, unlawful detention, and false

imprisonment, they have clarified in their opposition to the instant motion to dismiss that they specifically and expressly abandoned those claims in their Amended Complaint. In their memorandum in opposition to the motion to dismiss, plaintiffs explicitly states as follows:

> Plaintiffs do not seek relief for their injuries from the false arrest, false imprisonment, unreasonable search of their residence and vehicles, but for those culminating or subsumed in and now solely actionable through the malicious prosecution claims in federal and state law, all precipitated by false statements uttered by employees of [CardCash] in New Jersey, relayed by agents of [PayPal] in Arizona, without the responsive information provided by Jeremy Deshotel….[1]

Considering the foregoing, the motion to dismiss the plaintiffs' false imprisonment claim is DENIED AS MOOT, as no such claim is pending at this time.[2]

---

[1] *See* plaintiffs' opposition brief, Doc. 86, at p. 2.

[2] Additionally, any claim for false imprisonment would be time-barred, as argued by the defendants. Louisiana applies a one-year prescriptive period to claims for false imprisonment or false arrest, which accrues on the date of the arrest. *See Hobson v. Prudhomme*, 2019 U.S. Dist. LEXIS 4297, at *10 (W.D. La. Jan. 8, 2019) ("In Louisiana, delictual actions, including claims for . . . false imprisonment and the like, are subject to a liberative prescription period of one year."); *Thomas v. Gryder*, 2018 U.S. Dist. LEXIS 148743, at *7 (M.D. La. Aug. 30, 2018) ("[T]he one-year period in which Plaintiff was required to bring his state law claims began to run on the date Plaintiff was allegedly 'falsely imprisoned.'"); *Tassin v. Jones*, 2001 U.S. Dist. LEXIS 13267, at *4 (E.D. La. Aug. 17, 2001) ("Louisiana provides a one year prescriptive period for torts such as false arrest beginning on the date of the arrest.").

Here, plaintiffs allege there were arrested on September 28, 2016. Thus, at the latest, plaintiffs had one year from September 28, 2016, or until September 28, 2017, to sue for false imprisonment under Louisiana law. But they did not sue until March 23, 2019. *Doc. 1*. Therefore, to the extent they allege a false imprisonment claim, it is time-barred.

## 2.  Malicious Prosecution

The plaintiffs' claims for malicious prosecution against the Scott defendants appear to be alleged under both Section 1983 and Louisiana law.[3]

### a.  __Section 1983__

United States Code Title 42, Section 1983, creates a cause of action for an individual whose constitutional rights are violated by a person acting under the color of state or federal law.  The purpose of §1983 is to deter "state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161 (1992).  Thus, Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Reitz v. City of Abilene*, 2017 WL 3046881, at *11 (N.D. Tex. May 25, 2017), *report and recommendation adopted*, 2017 WL 3034317 (N.D. Tex. July 17, 2017), citing *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted).  To survive a motion to dismiss a §1983 claim for alleged deprivation of constitutional rights,

---

[3] To the extent the plaintiffs allege that Lege violated his constitutional rights by engaging in malicious prosecution, the Fifth Circuit has held that a freestanding 42 U.S.C. §1983 claim based solely on malicious prosecution is not viable.  *See Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir.2003) (en banc), *cited in Travis v. City of Grand Prairie, Texas*, 654 F. App'x 161, 164 (5th Cir. 2016.

the plaintiff must allege that (1) a state actor, i.e., a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867-69 (5th Cir. 2012) (en banc). *See also James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008), *citing Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir.2000) (to state a Section 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.").

A plaintiff, moreover, may hold a municipality or local government entity liable under §1983 "only for acts for which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). Municipal liability does not attach merely on a theory of respondeat superior or because an employee committed a tort. *Pembaur*, 475 U.S. at 479. A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation. *James*, 535 F.3d at 373, *citing Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999). A supervisor is not personally liable for his subordinate's actions in which he had no involvement. *Id.* at 443–44. Requiring a plaintiff to identify a policy or custom that caused his or her injury "ensures that a municipality is held liable only for those deprivations resulting from

13

the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997). State actors may defend themselves by claiming they have qualified immunity for their actions, as long as "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

There is a heightened pleading standard for cases brought under §1983. "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). In discharging this burden the plaintiff must satisfy a two-prong test. *Id.* The plaintiff must allege that defendants committed a constitutional violation under current law, and that defendant's actions were objectively unreasonable "in light of the law that was clearly established at the time of the actions complained of." *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). For the law to be clearly established at the time of the action, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004) (en banc), *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

14

## i.  <u>The Fourth Amendment</u>

The plaintiffs allege that all of their claims against the Scott defendants are subsumed under their claim for malicious prosecution.  It also appears the plaintiffs allege a malicious prosecution claim against the Scott defendants under both federal and state law.

The Supreme Court has held that "[t]he first inquiry in any §1983 suit is to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). "Despite frequent use of the term 'malicious prosecution' to describe a wide range of events attending a filing of criminal charges and even continuing through trials, the tort of malicious prosecution has a relatively narrow and widely accepted definition[:]

> The tort of malicious prosecution of criminal proceedings occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefor, if the proceedings terminate favorably for the person thus prosecuted.[6]
>
> It signifies that initiation of charges without probable cause lies at the heart of this definition, one that is deployed by state courts throughout the country . . .

*Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003).

### ii.    Claims against Sergeant Lege in his individual capacity

In *Winfrey v. Rogers*, 901 F.3d 483, 491–92 (5th Cir. 2018), the Fifth Circuit held that the plaintiff presented a cognizable claim under the Fourth Amendment when he brought a Section 1983 action against a deputy sheriff, alleging that deputy violated his constitutional rights by using false information to secure arrest and search warrants and by failing to disclose exculpatory evidence, to wit:

> Furthermore, we agree that a Fourth Amendment claim is cognizable under the facts here. This Court has held that although there is no "freestanding constitutional right to be free from malicious prosecution," "[t]he initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example." *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc). In *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), a plurality of the Supreme Court said that malicious-prosecution claims must be based on the Fourth Amendment, rather than on "the more generalized notion of 'substantive due process,' " because the Fourth Amendment is the explicit textual source against this type of government behavior. *Id.* at 273, 114 S.Ct. 807 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ). And recently, in *Manuel v. City of Joliet*, —— U.S. ——, 137 S.Ct. 911, 197 L.Ed.2d 312 (2017), the Supreme Court considered whether a plaintiff had stated a Fourth Amendment claim when he was arrested and charged with unlawful possession of a *492 controlled substance based upon false reports written by a police officer and an evidence technician. *Id.* at 915. There, the Court said the plaintiff's "claim fits the Fourth Amendment, and the Fourth Amendment fits [the plaintiff's] claim, as hand in glove." *Id.* at 917. And it held "that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Id.* at 920.
>
> These cases fully support a finding that the Fourth Amendment is the appropriate constitutional basis for Junior's claim that he was wrongfully arrested due to the knowing or reckless misstatements and

16

omissions in Johnson's affidavits. We, therefore, hold that a Fourth Amendment claim is presented, and we will decide the remainder of the issues based upon this legal conclusion

*Winfrey*, 901 F.3d at 491–92, *cert. denied sub nom. Johnson v. Winfrey,* 139 S. Ct. 1549, 203 L. Ed. 2d 712 (2019).

In this case, the plaintiffs allege that they were arrested, searched, detained, and charged based on either false information or information that failed to include critical exonerating evidence which was supplied and presented by Sergeant Lege when he applied for warrants. To the extent the plaintiffs are alleging that the Scott defendants initiated or procured the initiation of criminal proceedings against them, for an improper purpose and without probable cause therefor, and where the original charges of money laundering terminated in their favor, the undersigned concludes that the plaintiff's claims are properly framed within the scope of the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures."

Defendant Lege argues that he is entitled to qualified immunity in connection with the plaintiffs' claims against him. As an initial matter, the undersigned notes that although Rule 12(b)(6) and Rule 8(c) do not preclude the assertion of a defense in a motion to dismiss filed pursuant to Rule 12(b)(6), the Fifth Circuit and federal district courts within the circuit have noted that "a motion under Fed. R. Civ. P. 12(b)(6) is certainly a poor vehicle for resolving claims of qualified immunity."

17

*Reitz v. City of Abilene*, 2017 WL 3046881, at \*12 (N.D. Tex. May 25, 2017), *report and recommendation adopted*, 2017 WL 3034317 (N.D. Tex. July 17, 2017).  *See also Thomas v. City of Desoto*, 2002 WL 1477392, at \*1 n.1 (N.D. Tex. July 8, 2002) (accepting recommendation of Mag. J.).  "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) (cited with approval in *Thomas*).  Plaintiffs simply do not need to "anticipate the immunity defense" when filing their complaint. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998); *accord Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc) (holding that plaintiffs are not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12").

In resolving the defense of qualified immunity, courts determine: (1) whether the facts, taken in the light most favorable to the party asserting the injury, show the officer violated a federal right and (2) whether the right was "clearly established" when the violation occurred.  *Tolan v. Cotton*, 572 U.S. 650, 134 S.Ct. 1861, 1865–66, 188 L.Ed.2d 895 (2014).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (alterations in original) (quoting *Anderson*

*v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ). The Court does not need "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The Court uses a standard of "objective reasonableness" to define "the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest." *Malley v. Briggs*, 475 U.S. 335, 344, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Qualified immunity "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). And it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting *Malley*, 475 U.S. at 341, 106 S.Ct. 1092).

Here, the clearly established constitutional right asserted by plaintiffs is to be free from police arrest, searches, and detention without a good faith showing of probable cause. Since *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes "a false statement knowingly and intentionally, or with reckless disregard for the truth" and (2) "the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155–56, 98 S.Ct. 2674, cited in *Winfrey v. Rogers*, 901 F.3d 483, 493–94 (5th Cir. 2018), *cert. denied sub nom. Johnson v. Winfrey*, 139 S. Ct. 1549, 203 L. Ed. 2d

19

712 (2019). In *Franks*, the Supreme Court observed that the warrant requirement is meant "to allow the magistrate to make an independent evaluation of the matter." *Id.* at 165, 98 S.Ct. 2674. It requires affiants to "set forth particular facts and circumstances underlying the existence of probable cause," including those that concern the reliability of the information and the credibility of the source to avoid "deliberately or reckless false statement[s]." *Id.*

In this case, the plaintiffs allege that Sergeant Lege "prepared affidavits and arrest warrants for the arrest of the plaintiffs … based on the false information provided by CardCash and related by PayPal."[4] Plaintiffs go on to allege that Lege "failed to mention that Courtney was not a member of Giftopia," and intentionally failed omitted exonerating facts from his affidavit.[5] In this manner, the plaintiffs allege that Lege used false and/or incomplete and/or misleading information in obtaining the arrest warrants and search warrants.

In support of his argument that he is entitled to qualified immunity, Lege argues the plaintiffs have pled no facts which indicate Lege had grounds to disbelieve the PayPal investigator, or what specific information contained in the affidavits were false. Lege goes on to argue that the "probable cause" chain was broken at the point that a neutral judge found probable cause for the arrests and

---

[4] *See* Amended Complaint, Doc. 57, at para. 26.
[5] *Id.*

20

searches.[6]  Plaintiffs also allege, however,  that as a result of []Lege's "willful action and the Scott Police Department's intentional failure, [p]laintiffs were charged with felonies, falsely imprisoned and maliciously prosecuted under felony charges."[7]

After review of the pleadings and briefs, the undersigned concludes that the plaintiffs' allegations are specific enough to allow the Court to draw the reasonable inference that Lege would be liable for the harm alleged and that, if true, they would defeat a qualified immunity defense.  The defendants make much of the fact that the chain of causation was broken by the judge in this matter – who found probable cause to issue the arrest and search warrants – however, the defendants ignore the fact that, if the applications themselves were tainted, then there could well be a lack of probable cause for the warrants.  These applications were prepared by Sergeant Lege.  Nevertheless, at this juncture, there remain significant questions to be answered as to the details of the Lege's knowledge, actions, and alleged omissions, and most specifically, the details of his conversations and communications with the PayPal defendants, as well as his communications with other sources he argues he obtained information from, including CardCash and Capital One.  These facts are particularly important when evaluating the second prong of the qualified immunity test, i.e., the reasonableness of Lege's actions in light of the clearly established

---

[6] Id. at para. 27-28.
[7] Id. at para. 45.

constitutional right.  Until these questions are resolved, the Court is "unable to rule on the immunity defense without further clarification of the facts." *Backe*, 691 F.3d at 648, cited in *Webb*, No. 2014 WL 11930594, at *3.

When reviewing a well-pleaded complaint and a defendant's motion to dismiss on the basis of qualified immunity, a district court may defer its qualified immunity ruling and order limited discovery when "the court remains 'unable to rule on the immunity defense without further clarification of the facts.'" *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015), *citing Backe*, 691 F.3d at 648, *quoting Lion Boulos*, 834 F.2d at 507.  In other words, a district court may elect the defer-and-discover approach "when the defendant's immunity claim turns at least partially on a factual question" that must be answered before a ruling can issue.  *Lion Boulos*, 834 F.2d at 507.  It is well-settled that in cases wherein the district court defers the qualified immunity decision, the breadth of the ordered discovery is critically important.  Qualified immunity is immunity not only from judgment, but also from suit; "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery." *Hinojosa*, 807 F.3d at 672, *citing Backe*, 691 F.3d at 648. Therefore, the discovery that the district court orders must be "narrowly tailored to uncover only those facts needed to rule on the immunity claim." *Id.*, *quoting Lion Boulos*, 834 F.2d at 507–08.

22

The undersigned concludes that discovery may include any communications that Lege had in preparing his affidavits for arrest warrants and search warrants, including his communications with PayPal investigator and CardCash representatives (to the extent he had any); examination of PayPal and/or CardCash accounts, as well as any communications with Capital One, and any documents he was provided by any of the foregoing entities in preparing his affidavits. Plaintiffs may also inquire as to Lege's personal knowledge, informed by any of the foregoing, in preparing his affidavits.

Thus, with regard to paintiffs' §1983 against Sergeant Lege in his individual capacity, the undersigned recommends that the motion to dismiss be denied at this time, subject to the rights of Defendant Lege to reurge a dispositive motion once limited discovery related to the issue of qualified immunity has been completed.

### iii.    Claims against Sergeant Lege in his official capacity

Plaintiffs have sued Sgt. Lege "individually and relating to his performance as a sworn officer of the Scott Police Department, acting under Color of Law and under color of the statutes, ordinances, regulations, policies, customs and uses of the City of Scott, and its police department."[8]  Plaintiffs allege that at all times material

---

[8] *See* plaintiffs' Amended Complaint, Doc. 57, at para. 2D.

to this litigation, Sgt. Lege was "acting in his official capacity as a sworn officer of the Scott Police Department..."[9]  The City of Scott is likewise a named defendant.

Under well-established jurisprudence, the plaintiff's claims against Sgt. Lege in his "official capacity" should be dismissed, because the caselaw is clear that "[a] judgment in a §1983 lawsuit against an official in his official capacity imposes liability against the entity he represents." *Deshotels v. Village of Pine Prairie*, 2012 WL 1712358, at *4 (W.D.La. Apr. 13, 2012).   It is "well settled that a suit against a municipal official in his or her official capacity is simply another way of alleging municipal liability." *Howell v. Town of Ball*, 2012 WL 3962387, at *4 (W.D.La. Sept. 4, 2012), *citing Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). When, as in this case, the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them. *See, e.g., Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir.2001); *Flores v. Cameron County*, Tex., 92 F.3d 258, 261 (5th Cir.1996); *Broussard v. Lafayette City-Parish Consolidated Government*, 45 F.Supp.3d 553, 572 (W.D.La. Sept. 5, 2014).   Accordingly, the undersigned recommends that the claims against Sgt. Lege in his official capacity

---

[9] *Id.* at para. 6.

be dismissed as a matter of law, as they are redundant of the claims alleged against the City of Scott.

### iv.    Federal claims against the City of Scott

With respect to the plaintiffs' claim for malicious prosecution against the City of Scott, a plaintiff may hold a municipality or local government entity liable under §1983 "only for acts for which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). Municipal liability does not attach merely on a theory of respondeat superior or because an employee committed a tort. *Pembaur*, 475 U.S. at 479.  A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.  *James*, 535 F.3d at 373, *citing Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir.1999).  A supervisor is not personally liable for his subordinate's actions in which he had no involvement.  *Id.* at 443–44.

Specifically, a plaintiff must identify: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Travis v. City of Grand Prairie, Texas*, 654 F. App'x 161, 165 (5th Cir. 2016), citing *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir.2002), *quoting Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001).  Here, the plaintiffs have not

identified an official policy (or custom), of which a policy maker can be charged with actual or constructive knowledge, and a constitutional violation whose 'moving force' is that policy (or custom)." Thus, the plaintiffs have not identified a constitutional violation that could support a finding of municipal liability. *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir.1997) ("Without an underlying constitutional violation, an essential element of municipal liability is missing."). Consequently, the plaintiffs' Section 1983 claim against the City should be dismissed.

### b. State law claim for malicious prosecution

Under Louisiana law, "[a]ctions for malicious prosecution are disfavored and a clear case must be established." *Graham v. Foret*, 818 F. Supp. 175, 177 (E.D. La. 1992), *citing Jones v. Soileau,* 448 So. 2d 1268 (La. 1984); *Johnson v. Pearce,* 313 So. 2d 812 (La. 1975). To state a claim for malicious prosecution under Louisiana law, the plaintiff must prove the following six elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) a bona fide termination of the original proceeding in favor of the present plaintiff; (4) the absence of probable cause for the original proceeding; (5) malice on the part of the present defendant in the original proceeding; and (6) damage to the present plaintiff. *Jones,* 448 So. 2d at 1271. Specifically, under Louisiana law, a police officer who

allegedly made material omissions and false statements in an affidavit underlying an arrest does not engage in false imprisonment, malicious prosecution, or abuse of process, as to arrestees, absent evidence of malice or ulterior motive. *Jenkins v. Baldwin*, 801 So. 2d 485, 497 (La. App. 4th Cir. 8/29/01), *citing Morin v. Caire,* 77 F.3d 116 (5th Cir. 1996). Thus, under Louisiana law, the tort of malicious prosecution requires malice as an essential element. *Id.* Malice may be inferred from a lack of probable cause, or from a finding that the defendant acted in reckless disregard of the other person's rights. *Jenkins*, 801 SO.2d at 497, *citing Miller v. East Baton Rouge Parish Sheriff's Dep't.,* 511 So.2d 446, 453 (La.1987).

Although the plaintiffs do not specifically allege that Sergeant Lege acted with malice or ulterior motive, they do allege that there was no probable cause to support Sergeant Lege's applications for arrest warrant and search warrants, and they allege Lege intentionally left out exonerating evidence when he applied for the same. Because malice may be inferred from a lack of probable cause, or from a finding that the defendant acted in reckless disregard for other person's rights, the Court finds that the plaintiff's claims are sufficient to state a cause of action for malicious prosecution under Louisiana law.

In response to the plaintiffs' state law claim of malicious prosecution, Sergeant Lege pleads qualified immunity as a defense. Qualified immunity under state law is identical to the federal standard. *Moresi v. State Through Dep't of*

27

*Wildlife and Fisheries*, 567 So.2d 1081, 1093 (La. 1990). As with the qualified immunity defense raised in response to the plaintiffs' Section 1983 claims, the undersigned concludes that there remain significant questions to be answered and the court is unable to rule on the immunity defense without further clarification of the facts. With regard to plaintiffs' claims of malicious prosecution under Louisiana law, the undersigned recommends that the motion to dismiss be denied at this time, subject to the rights of Defendant Lege to reurge a dispositive motion once limited discovery related to the issue of qualified immunity has been completed.

### c.  Heck analysis

Finally, the undersigned addresses the argument advanced by the defendants that *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d383 (1994) bars the plaintiffs' malicious prosecution claims. In *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), Heck was convicted in an Indiana state court of voluntary manslaughter for the killing of his wife. While serving a 15 year sentence in an Indiana prison, and while the appeal from his conviction was pending, Heck filed a suit in federal court under 42 U.S.C. §1983. He alleged that prosecutors and investigators engaged in "unlawful, unreasonable and arbitrary investigation" leading to his arrest. The United States Supreme Court upheld the district court's dismissal of the civil suit, stating:

> We hold that, in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions whose

28

unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. *A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated*. (Emphasis added).

*Heck*, 512 U.S. at 485-86.

Defendants argue that because Jeremy ultimately pled guilty to the controlled substances charges, there was no result in his favor, and he therefore fails to satisfy one of the essential elements of a malicious prosecution claim.  In support of this argument, defendants argue that cases have held that probable cause for one offense is probable cause for any offense that a suspect could have been charged with, citing *State v. Frosch*, 816 So.2d 269 (La. 3/22/02) (an arrest for a crime for which probable cause does not exist can be justified by probable cause to arrest for another offense).

In *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007), the Tenth Circuit explained the purpose of Heck:

The purpose behind *Heck* is to prevent litigants from using a §1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions. *See Muhammad v. Close,* 540 U.S. 749, 751–52, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (per curiam). The starting point for the application of *Heck* then is the

existence of an underlying conviction or sentence that is tied to the conduct alleged in the §1983 action. In other words, a §1983 action implicates *Heck* only as it relates to the conviction that it would be directly invalidating. There is no such conviction here.

In *Butler*, the plaintiff was not convicted of the burglary charges arising out of Officer Compton's arrest, he was convicted of three other unrelated burglary charges after he pled guilty to those charges. He pled guilty to these unrelated burglary charges as part of the same plea agreement in which the burglary charges arising out of Officer Compton's arrest were dismissed.   The plaintiff then filed a §1983 action, alleging Fourth Amendment violations, wherein he did not challenge any conduct relating to his conviction on the three burglary charges to which he pled guilty. Rather, his sole challenge was to the constitutionality of Officer Compton's conduct during his arrest for the burglary charges that were dismissed. *Butler*, 482 F.3d at 1279–80.  Recognizing that the issue was one of first impression, the district court concluded that it was appropriate to use Mr. Butler's conviction on the unrelated burglary charges as the basis for applying *Heck* to Mr. Butler's case. *Butler*, 482 F.3d at 1280.

The Tenth Circuit reversed, explaining:

Mr. Butler's §1983 action seeks compensatory and punitive damages based on conduct that occurred during an arrest by Officer Compton that resulted in two burglary charges. Mr. Butler was not convicted on those charges because they were dismissed as part of a plea agreement. There is no related underlying conviction therefore that could be invalidated by Mr. Butler's §1983 action. Moreover, the purpose behind *Heck* is not implicated here because there is no attempt by Mr. Butler

30

> to avoid the pleading requirements of habeas.  He cannot bring a habeas action because he has no conviction to challenge. Mr. Butler's conviction on unrelated charges may not form the basis for the application of *Heck* where there is no challenge to that conviction in Mr. Butler's §1983 action.

*Id.* at 1280–81.

The undersigned was unable to find a case within the Fifth Circuit that holds precisely as *Butler* does, and the parties inadequately briefed the issue.  In a footnote, defendants cite a sole case -- *State v. Frosch*, 816 So.2d 269 (La. 3/22/02) – which applies state law and does not articulate the standard for the *Heck* bar under federal law.  Defendants rely on *Frosch* for the proposition that "probable cause for one offense is probable cause for any offense that a suspect could have been charged with."  In *Arizmendi v. Gabbert*, 919 F.3d 891, 903 (5th Cir.), *cert. denied*, 140 S. Ct. 220, 205 L. Ed. 2d 137 (2019), the undersigned finds support for the principle that an officer cannot deliberately or recklessly misstate or omit facts in a warrant affidavit to procure a warrant to arrest someone for a specific crime, then escape liability by retroactively constructing a justification for a warrantless arrest based on a different crime.  The *Arizmendi* Court draws a specific distinction between warrantless and warrant-based arrests.

In the instant case, Courtney Deshotels was convicted of no crime, and pled guilty to no charge.  Therefore, *Heck* does not bar any of her claims.  With respect to Jeremy Deshotels, the undersigned finds that, as in Butler, Jeremy's drug charges

31

-- to which he pled guilty – may not form the basis for the application of Heck, where there is no challenge to that conviction in Jeremy's Section 1983 action. Rather, Jeremy challenges the actions of Sergeant Lege in preparing the affidavits for the arrest warrants and search warrants on the monetary charges. Only after obtaining warrants related to monetary charges did Sergeant Lege uncover the narcotics, which led to the charges to which Jeremy eventually pled guilty. The factual bases for the charge that Jeremy pled guilty to was completely and wholly unrelated to the money laundering charges, and but for the arrest and search warrants the plaintiffs allege are tainted, the narcotics charges would not have been initiated. Under this factual scenario, the undersigned concludes that *Heck* does not bar the plaintiffs' malicious prosecution claims.

**CONCLUSION**

Considering the foregoing,

**IT IS RECOMMENDED** that the Re-Urged Motion to Dismiss for Failure to State a Claim [Doc. 66] be GRANTED IN PART AND DENIED IN PART. IT IS RECOMMENDED that defendants' motion to dismiss the plaintiffs' false imprisonment claims be DENIED as MOOT, as no such claims are pending at this time.

IT IS FURTHER RECOMMENDED that defendants' motion to dismiss dismiss plaintiffs' malicious prosecution claims alleged Sergeant Lege in his official

capacity under federal law be GRANTED, and those claims be DISMISSED WITH PREJUDICE. IT IS FURTHER RECOMMENDED that the claims alleged against Sergeant Lege in his individual capacity under federal law be DENIED at this time, subject to the rights of the defendant to reurge a dispositive motion, if appropriate, once limited discovery related to the issue of qualified immunity has been completed.

IT IS FURTHER RECOMMENDED that the defendants' motion to dismiss the plaintiffs' Section 1983 claim against the City be GRANTED, and that those claims be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the defendants' motion to dismiss the plaintiffs' state law malicious prosecution claims be DENIED at this time, subject to the right of the defendants to reurge a dispositive motion, if appropriate, once limited discovery related to the issue of qualified immunity has been completed.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 2nd day of April, 2020 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE