## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

JEREMY RAYE DESHOTEL, ET AL.          CIVIL ACTION NO. 6:19-0373

VERSUS                                JUDGE JUNEAU

PAYPAL, INC., ET AL.                  MAG. JUDGE WHITEHURST

### REPORT AND RECOMMENDATION

Before the undersigned, on referral from the district judge, is the Motion to Sever and Transfer Venue Pursuant to 28.U.S.C. 1404(a) and Fed. R.Civ. P. 21 or Alternatively, to Dismiss for Failure to State a Claim [Doc. 62] filed by defendant CardCash Exchange, Inc. ("defendant" or "CardCash"). The motion is opposed by the plaintiffs Jeremy and Courtney Deshotel ("plaintiffs" or "Jeremy" and "Courtney")[Doc. 74], and the defendant filed a Reply brief [Doc. 88]. For the following reasons, it is RECOMMENDED that the Motion to Transfer Jeremy Deshotel's claims be GRANTED, and the Motion to Transfer Courtney Deshotel's claims be DENIED. IT IS FURTHER RECOMMENDED that the Motion to Dismiss Courtney Deshotel's claims for failure to state a claim be GRANTED, as explained herein below.

### I.    FACTUAL BACKGROUND

According to the Amended Complaint filed in this matter, in December 2015, Jeremy Deshotel and a non-party individual formed a limited liability company

1

named Giftopia, LLC ("Giftopia") for the purpose of operating as a bulk gift card exchange. *R. 57,¶ 9.* Giftopia would, through websites, forums and Facebook, make online purchases of unwanted physical and digital gift cards issued by various service and merchandise vendors at discount. *Id.* Sellers would convey either a physical gift card or an electronic or digital gift card, with full or partial balance remaining, to Giftopia. *Id.*

The Complaint alleges that Jeremy began a business relationship with defendant CardCash in approximately December 2015, which lasted until April 2016, during which time Giftopia sold the gift cards they had procured to CardCash. *Id., ¶ 14.* Per the conditions on the CardCash website, purchasers of such gift cards had 45 days from delivery to complain about deficiencies in the credit balance programed into the gift cards or credited to digital gift cards sold by CardCash. *Id.* Jeremy signed a terms and conditions agreement with CardCash whereby he agreed that if any purchaser from CardCash complained within 45 days after the transaction with CardCash, and CardCash refunded, that Giftopia would reimburse CardCash. *Id., ¶ 12.*

In order for Jeremy Deshotel to do business with CardCash, and in connection with his use of the CardCash website, he was required to agree to CardCash's Terms of Service. Defendant argues in its motion that all transactions with CardCash were

2

conducted pursuant to those terms.[1]  The Terms of Service included a forum-selection clause which reads:

> 23. Venue; Applicable Law. YOU AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT, OR YOUR USE OF THIS SITE OR ANY SAMPLES OR PRODUCTS OBTAINED BY YOU THROUGH SUCH USE, SHALL BE LITIGATED IN THE CIRCUIT COURT OF OCEAN COUNTY, NJ, OR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY. YOU ARE EXPRESSLY SUBMITTING AND CONSENTING IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR PROCEEDING IN ANY OF SUCH COURTS, AND ARE WAIVING ANY CLAIM THAT EAST WINDSOR, NJ OR THE DISTRICT OF NEW JERSEY IS AN INCOVENIENT FORUM OR AN IMPROPER FORUM BASED ON LACK OF VENUE.[2]

In addition to the forum-selection clause governing any claims arising out of use of the CardCash website, the Terms of Service included a choice-of-law provision providing as follows:

> … This site is created and controlled by CardCash LLC, in the State of New Jersey, USA.  As such, the laws of New Jersey will govern the terms and conditions contained in this Agreement and elsewhere throughout the Site, without giving effect to any principles of conflicts of laws.[3]

According to the affidavit of Abraham Nojowitz, Vice President of Operations for CardCash, Jeremy Deshotel would not have been able to place an order through

---

[1] *R. 62*, Exh. 1, Decl. of Nojowitz, ¶¶5-6, 8.
[2] *R. 62*, Exh. 1, Decl. of Nojowitz; see also Exh. B, thereto, CardCash Terms of Service, effective December 2015 through April 27, 2016.
[3] *Id.*

the CardCash website unless and until accepting the CardCash Terms of Service. Moreover, if the terms were not agreed upon, Jeremy Deshotel and Giftopia could not have been registered to use the CardCash online gift card marketplace.[4]   After contracting with CardCash, Jeremy Deshotel and Giftopia sold a number of gift cards to CardCash.  The transfer of funds for the sale of gift cards by Giftopia to CardCash was effected by CardCash initially via ACH and wire transfers, and subsequently through PayPal.  *R. 57, ⁋ 16*. Plaintiffs allege that there was a one or two day turn around between Giftopia's sending of gift cards to CardCash and payment initiated by CardCash.  *Id*. At the time of these transactions with CardCash, the plaintiffs resided in Scott, Louisiana, and Jeremy operated this part-time business from the computers in their home. *R. 57, ⁋ 13.* Also at that time, Jeremy was a Regional Vice President with Primerica. *R. 57, ⁋ 15.*

The Amended Complaint alleges that Giftopia's account manager with CardCash, Joseph Blaustein ("Blaustein"), advised Jeremy that CardCash would buy as many gift cards as he could procure, and that other vendors of CardCash had made millions of dollars selling gift cards to CardCash.  *R. 57, ⁋ 16.* Based on this information, during the last week of April 2016, Giftopia began a purchasing campaign to procure and sell to CardCash as many gift cards as possible.  *Id.* Giftopia used all the available assets of its members to purchase a large quantity of gift cards,

---

[4] *Id.*

with a total face value of approximately $60,000.00. *Id.* Jeremy subsequently examined Giftopia's CardCash account online and could see that CardCash's payment was not being processed as expeditiously as in the past. *Id.*

At some point thereafter, Blaustein advised that CardCash would not pay the $40,000.00 due to Giftopia for this substantial transaction for digital gift cards because CardCash "... had enough of them." *R. 57, ₱ 17.* The Giftopia members decided to cease conducting business with CardCash. *Id.*

Plaintiffs allege that in early May 2016, Jeremy received an email from PayPal advising that there was an issue with his account. *R. 57, ₱ 18.* Plaintiffs allege that prior to this time, Jeremy had approximately $12,000.00 in credit in his PayPal account. *Id.* Upon logging in, Jeremy found a negative balance of $68,000.00. *Id.* There were no details explaining what the issue was at that time, but the plaintiffs allege that Jeremy's PayPal account was used only to receive payments from CardCash. *Id.* Plaintiffs allege that Jeremy attempted to contact Blaustein, and subsequently received an email response from the CardCash Loss Prevention Manager, Mollie Berger. *R. 57, ₱ 19.* Ms. Berger indicated there was a $3,000.00 to $5,000.00 deficiency in gift cards previously received from Giftopia. *Id.* Plaintiffs allege that Berger admitted at that time that she had told PayPal that CardCash had not received any merchandise from Giftopia as a precautionary measure, which plaintiffs allege is not true. *Id.*

5

According to the Amended Complaint, communications with CardCash continued for approximately nineteen (19) days, during which time the purported amount of Giftopia's gift card deficiency steadily increased. *R. 57, ¶ 20.* Plaintiffs allege that Giftopia was never advised of which cards were deficient and in what amounts. *Id.* Jeremy Deshotel's last communication with CardCash was May 24, 2016, at which time the CardCash Loss Prevention Manager agreed to send Jeremy a list of cards with a deficiency to enable Giftopia to seek reimbursement from their individual vendors. *R. 57, ¶ 21.* At that time, Giftopia agreed to send valid gift cards to credit against the negative balance and to pay $5,000.00 to $7,500.00 to CardCash on the 15th of each month. *Id.* CardCash agreed to take steps to unfreeze Jeremy Deshotel's PayPal account to enable Giftopia to again buy and sell gift cards to raise funds for the deficiency. *Id.* However, plaintiffs allege that CardCash never sent the list of deficient gift cards to the plaintiffs. *R. 57, ¶ 22.*

Plaintiffs allege that during this same time frame, Jeremy Deshotel also spoke via telephone with a female who identified herself as an investigator for PayPal. *R. 57, ¶ 23.* According to the Amended Complaint, Jeremy explained to the PayPal investigator how Giftopia and CardCash did business and, specifically, how gift cards that Giftopia had procured were sent to CardCash, which then paid Giftopia after receipt of the cards. Plaintiffs allege that the investigator accused Jeremy of lying, asserting that no one in business online sends merchandise to the buyer

6

without being paid in advance, and that CardCash had never received any gift cards from Giftopia after having paid for them. *Id.* Plaintiffs further allege the Jeremy directed the PayPal investigator to examine CardCash's website, which clearly in its terms and conditions required such a procedure for those wishing to do business with CardCash. *Id.*

Around July 13, 2016, defendant Ashley Weres, a PayPal investigator, having completed an investigation against the plaintiffs, communicated with officers of the Lafayette Police Department. *R. 57, ⁋ 25.* Upon learning that the plaintiffs' transactions with CardCash had transpired when the plaintiffs resided in Scott, the Lafayette Police Department referred the PayPal investigator to the Scott Police Department. *Id.* Defendant Caleb Lege of the Scott Police Department prepared affidavits and arrest warrants for both plaintiffs, based on what the plaintiffs allege is false information provided by CardCash and PayPal. *R. 57, ⁋ 26.* Lege's affidavit alleged that "(b)etween the dates of February 10, 2016, and April 14, 2016, ABC Gift Cards sent $80,000.00 to purchase gift cards from the Giftopia, LLC using PayPal's financial services."[5] *Id.* The affidavit states that after ABC did not receive the merchandise purchased from Giftopia, a complaint was filed with PayPal. *Id.* The affidavit further states that PayPal made attempts to contact all of the parties

---

[5] According to the Amended Complaint, CardCash is the owner, operator/or manager of ABC Gift Cards, LLC. *R. 57, ⁋ 7.* Plaintiff alleges that ABC is a former New Jersey company which merged with Card Cash. *Id.*

without success.  *Id.* Plaintiffs allege that Lege's affidavit fails to indicate the conversations that Jeremy Deshotel had with PayPal investigators and fails to mention that Courtney Deshotel was not a member of Giftopia.  *Id.*

On September 27, 2016, arrest warrants for Jeremy Deshotel and Courtney were issued by Judge Duplantier of the 15th Judicial District Court in Lafayette Parish. *R. 57, ¶27.* The charges listed in the warrant were Illegal Transmission of Monetary Funds and Money Laundering, allegedly committed on or about February 10, 2016.  *Id.* According to the Complaint, the same information used to prepare the arrest warrants was used to prepare an affidavit in support of a search warrant for the search of plaintiffs' new home in Youngsville..

The search warrant was executed on September 28, 2016. *R. 57, ¶ 29.*  During the execution of the search and arrest warrants, defendant Lege, assisted by two detectives, seized items of personal property belonging to the plaintiffs, including but not limited to anabolic steroids, hypodermic syringes, and firearms.  *R. 57, ¶¶ 29-30.* On the same date, two additional search warrants were obtained for the search of the plaintiffs' vehicles.  Both plaintiffs were arrested at their residence in Youngsville and transported to the Lafayette Parish Correctional Center for booking. In addition to the charges stated in his arrest warrant, Jeremy was arrested on charges of: (1) Possession of Schedule III Narcotics (anabolic steroids), (2) Possession of Drug Paraphernalia (hypodermic syringes), and (3) Illegal Carrying of Weapons.

Courtney was arrested on charges of: (1) Sale/Distribution/Possession of Legend Drugs, and (2) Possession of Schedule II Narcotic. *R. 57, ¶¶ 33-35.*

After his arrest, Jeremy Deshotel was suspended from Primerica. *R. 57, ¶ 36.* Plaintiffs also allege that as the result of Jeremy's loss of income and inability to obtain comparable employment, the plaintiffs could not meet their financial obligations, and they were forced to voluntarily surrendered their residence, losing their down payment. *R. 57, ¶ 38.* CardCash filed a lawsuit against the plaintiffs in the Superior Court of New Jersey, Ocean County, and obtained a default judgment against them in the amount of $58,969.07 on December 12, 2017. *R. 57, ¶ 39.*

On May 4, 2018, the illegal transmission and money laundering charges against both plaintiffs were dropped by the Lafayette District Attorney's office. *R. 57, ¶ 40.* On November 13, 2018, Jeremy Deshotel pled guilty to the charge of Possession of Drug Paraphernalia, and the charge of Possession of Schedule III Drugs was dismissed. *R. 57, ¶ 42.* On December 3, 2018, the Charges of Possession of Schedule II Drugs and Possession of Legend Drugs against Courtney Deshotel were dismissed. *R. 57, ¶ 43.*

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed suit against the Scott Police Department, Caleb David Lege, CardCash, PayPal, and Ashley Were on March 23, 2019.   In their original Complaint, the plaintiffs allege the following claims:

- Detrimental reliance against CardCash only, under Louisiana law;

- False imprisonment against all parties under Louisiana law;

- Malicious prosecution against CardCash under New Jersey law;

- Malicious prosecution against Ashley Were and PayPal under Arizona law.

Various motions to dismiss were filed before the plaintiffs sought leave to amend their complaint.  The Court allowed the amendment and denied all motions to dismiss as premature, reserving unto defendants their rights to re-file their motions once the Amended Complaint was filed.  The Amended Complaint was filed on August 22, 2019 [Doc. 57], and several motions to dismiss were filed thereafter, including the instant motion pending before the Court at this time.

In their Amended Complaint, the plaintiffs amend their claims as follows:

- Promissory estoppel or detrimental reliance against CardCash only, under either Louisiana or New Jersey law;

- Malicious prosecution against all parties under 43 U.S.C. §1983 (Fourth Amendment);

- Malicious prosecution, apparently against all parties, under New Jersey law;

- Malicious prosecution, apparently against all parties, under Louisiana law;

- Plaintiffs include an allegation that under Louisiana's choice of law provisions, New Jersey law is "primarily applicable" to all claims alleged against CardCash, while "the law of the State of Arizona may be applicable" to all claims alleged against Ashley Were;

- The plaintiffs also claim they are entitled to punitive damages for all malicious prosecution claims.

## III.   LAW AND ANALYSIS

### A. Motion to Transfer/Forum Selection Clause

CardCash seeks to transfer the claims of both Jeremy and Courtney Deshotel to the United States District Court for the District of New Jersey pursuant to a forum selection clause by which CardCash alleges plaintiffs are bound.  Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses [and] in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. §1404(a).  A defendant seeking a transfer of venue must demonstrate that the plaintiff could have originally brought the action in the transferee court.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir.2004) ("*Volkswagen I* ") ("In applying the provisions of §1404(a), we have suggested that the first determination to be made is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.").  After

this initial showing has been made, the defendant must then demonstrate "good cause" why the case should be transferred. *See In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II* ").  A defendant can carry this burden by showing, through the relevant private and public interest factors enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 505, 508 (1947), that the transferee district is a more convenient venue.  *Volkswagen II*, 545 F.3d at 315.

The private interest factors applicable are: (1) the relative ease of access to sources of proof; (2) the cost of attendance for willing witnesses; and (3) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen I, 371 F.3d at 203*.  The relevant public interest factors are: (1) the administrative difficulties created by court congestion; and (2) the interest in having localized controversies decided at home.  *Id*.  The above-listed factors are not necessarily exhaustive or exclusive, and none should be given dispositive weight. *Volkswagen II*, 545 F.3d at 315.

When the parties hold a valid forum selection clause, however, the Fifth Circuit – guided by the Supreme Court's decision in *Atlantic Marine Constr. Co. v. United States Dist. Court*, 134 S.Ct. 568 (2013) – has held that the analysis is altered, explaining:

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." *Stewart,* 487 U.S., at 31, 108 S.Ct. 2239. The "enforcement of valid forum-selection clauses, bargained for by

the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.,* at 33, 108 S.Ct. 2239 (KENNEDY, J., concurring). For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*., at 33, 108 S.Ct. 2239 (same). The presence of a valid forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways.

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63, 134 S. Ct. 568, 581, 187 L. Ed. 2d 487 (2013).

The three differences in the analysis are as follows: (1) first, the plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted; (2) second, a court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests; and (3) third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules — a factor that in some circumstances may affect public-interest considerations.  *Atl. Marine*, 571 U.S. at 581-82.  In *In re Rolls Royce Corp.*, which interpreted and expounded upon *Atlantic Marine*, the Fifth Circuit stated:

> As is most relevant here, the district court cannot independently weigh the parties' private interests, but must deem such interests to weigh in favor of the preselected forum, the parties having struck that balance by their selection contract.  Accordingly, only the public-interests may

13

weigh against transfer, and "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that the forum-selection clauses should control except in unusual cases."

[ . . . ]

For cases where all parties signed a forum selection contract, the analysis is easy: except in a truly exceptional case, the contract controls.

775 F.3d 671, 678–79 (5th Cir. 2014).

Before the undersigned evaluates the issue of the enforceability of the forum selection clause at issue, brief mention of the issue of what law governs this issue is appropriate and necessary. In the opposition brief, the plaintiffs do not challenge the "validity" of the forum selection clause, and to the extent that "validity" is a separate question from the "enforceability" of the clause, the undersigned notes that precise issue has not been briefed by the parties. In *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 301 (5th Cir. 2016), the Fifth Circuit explained that neither the Supreme Court nor the Fifth Circuit has said what source of law governs the "validity" of a forum-selection clause, and went on to note:

But even in diversity cases, federal law governs the "enforceability" of forum-selection clauses in this circuit. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997); *see Weber*, 811 F.3d at 770. This federal law, derived from a pair of seminal admiralty cases, requires a party attacking a forum-selection clause to overcome a presumption of enforceability by showing that the clause is "'unreasonable' under the circumstances" because

the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical

14

> purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Barnett*, 831 F.3d at 301, *citing Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), and *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12–13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). When the interpretation of a forum-selection clause is at issue in a diversity case, however, courts apply the forum state's choice-of-law rules to determine what substantive law governs. *Weber*, 811 F.3d at 770–71.

The instant case is not a diversity case. Indeed, in their Amended Complaint, the plaintiffs allege that the instant matter is one filed under a federal statute, to wit:

> This is an action for money damages brought by Plaintiffs, Jeremy Raye Deshotel and Courtney Marie Deshotel (nee' Williamson), pursuant to 42 U.S.C. 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and under the laws and constitution of the State of Louisiana and/or the State of New Jersey against CardCash Exchange, Inc., Paypal, Inc., Ashley N. Weres, Caleb David Lege, and the City of Scott, Louisiana.

With regard to jurisdiction, the Amended Complaint states that "Plaintiffs bring their complaint under 28 U.S.C. Section 1343(3) and 1331 . . ."[6] As the

---

[6] Plaintiffs alternatively asserts that "[j]urisdiction is also invoked pursuant to federal diversity jurisdiction, 28 U.S.C. 1332, as there are three (3) defendants that are diverse in citizenship and the amount in controversy exceeds $75,000." The Court notes that that the remaining defendants, Caleb Lege and the City of Scott, are (like Plaintiffs at the time of filing suit) citizens of Louisiana and, as such, destroy diversity jurisdiction.

question before the Court is the <u>enforceability</u> of the forum selection clause at issue, and given that this matter is presented to the Court within the context of a case where federal question is the basis for jurisdiction, the undersigned concludes that federal law governs the issues before the Court.

Applying *Atlantic Marine*, plaintiffs' claims against CardCash arise directly or indirectly out of the Terms of Service and/or Jeremy Deshotel's use of the CardCash website. Plaintiffs argue that Jeremy Deshotel did not see or read the forum selection clause at issue, and that CardCash has not argued the Terms of Service link on its website was actually clicked by the plaintiffs. Plaintiffs argue that the issue before the Court is whether the Terms of Service on the CardCash website were "reasonably communicated" to the plaintiffs. Plaintiffs further argue that because Courtney Deshotel did not access the CardCash website and is not a member of Giftopia, LLC, she cannot be bound by the forum selection clause.

CardCash has submitted the Declaration of Abraham Nojowitz, in which Mr. Nojowitz declares the following:

> CardCash operates a website on the internet located at www.cardcash.com (the "Website"). Through the Website, customers can sell or purchase gift cards after creating an account through the Website. In 2015 and 2016, a customer [sic] were create an account on the Website. Thereafter, each time a customer entered a transaction to buy or sell, the customer had to agree . . . to the Terms of Service by clicking a box before conforming the order. No order would be confirmed or placed unless the customer agreed. A true copy of a captured screen short of the Website's Order Review page is attached

16

hereto                    as                    Exhibit                    A.[7]

Thus, CardCash argues that Jeremy Deshotels would not have been able to place an order through the CardCash website unless and until accepting the CardCash Terms of Service.  Moreover, if the terms were not agreed upon, Jeremy and/or Giftopia could not have been registered to use the CardCash online gift card marketplace.  According to the allegations in the Plaintiffs' Amended Complaint, after contracting with CardCash, Jeremy Deshotel sold a number of gift cards to CardCash.  CardCash argues that by his very use of the website and through these transactions, Jeremy agreed to be bound by the CardCash Terms of Service.

Federal courts, including those in the Third and Fifth Circuits, have consistently held that "clickwrap" agreements, similar to CardCash's Terms of Service, are enforceable.  *See, e g., Klebba v. Netgear, Inc.,* 2019 U.S. Dist. LEXIS 17833, *10-*12, 2019 WL 453364 (W.D. Tex. Feb. 5, 2019) (holding plaintiff could not excuse himself from his obligation to read clickwrap agreement terms and that he "formed an agreement to arbitrate when he checked the checkbox next to the words, 'I agree to the Terms of Service.'"); *Jia v. Nerium Int'l LLC,* 2018 U.S. Dist. LEXIS 160090, *9, 2018 WL 4491163, at *3 (N.D. Tex. Sept. 18, 2018) (noting assent through an affirmative "click" is sufficient to bind the parties); *Bongalis-Royer v. RJ Worldwide, LLC,* 2015 U.S. Dist. LEXIS 183963, *9-*10, 2015 WL

---

[7] *R.*, Exh. 1, Decl. of Nojowitz, ¶¶5-6, 8.

12778846, at *5 (E.D. Tex. Jul. 16, 2015) ("Texas courts have recognized the validity of electronic contracts . . . [and] have repeatedly upheld the validity of 'clickwrap' agreements."); *In re Online Travel Co.,* 953 F. Supp. 2d 713, 719 (N.D. Tex. 2013); *Recursion Software, Inc. v. Interactive Intelligence, Inc.,* 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006)*; Realpage, Inc. v. EPS, Inc.,* 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007); *Schwartz v. Comcast Corp*., 256 Fed. Appx. 515, 520 (3d Cir. 2007)(when a customer is on notice of contract terms available on an internet website, the customer is bound by those terms); *Davis v. Dell*, 2007 U.S. Dist. LEXIS 94767, *14, 2007 WL 4623030, at *4 (D.N.J. Dec. 28, 2007) ("when a party uses his computer to click on a button signifying his acceptance of terms and conditions in connection with an online transaction, he thereby manifests his assent to an electronic agreement"); *ADP, LLC v. Lynch*, 2016 U.S. Dist. LEXIS 85636, *8-*9, *11-*17, 2016 WL 3574328, at *4 (D.N.J. June 30, 2016) (rejecting defendants' [former employees opposing forum selection clause] arguments that mutual assent was lacking as they were not forced to review the terms of the agreement and holding clickwrap agreements, requiring a party's consent in order to proceed with an internet transaction, served to provide reasonable notice of the terms, including a forum selection clause), *aff'd*, 678 Fed. Appx. 77 (3d Cir. 2017); *James v. Global Tel*Link Corp*., 2016 U.S. Dist. LEXIS 17099, *11-*18, 2016 WL 58976 (D.N.J. Feb. 11, 2016) (citing cases).

Plaintiffs' argument that they did not see the clickwrap agreement and/or did not actually click on the Terms of Service button -- and, therefore, cannot be bound by its terms -- is unpersuasive under the circumstances of this case. The irrefutable evidence is that Jeremy Deshotel could not have engaged in transactions with CardCash without clicking on the Terms of Service button. Central to the cited decisions is the fact that, as here, the consumer or end-user could not complete the transaction, download the software, install the software update, and/or use the service without manifesting assent to the terms of service or use by clicking a checkbox. Plaintiffs have not provided any law to the contrary, and the plaintiffs in this case fail to factually distinguish CardCash's Terms of Service from similar "clickwrap" agreements enforced by other courts. Thus, the caselaw is clear that where the user knew *or should have known about such terms*, the clickwrap agreement is enforceable.

There is also no evidence that the clickwrap agreement in this matter violates public policy, was used for a fraudulent purpose, or is fundamentally unfair. Rather, CardCash, which does business in 50 states, seeks to bring certainty and uniformity to claims arising out of use of its website by selecting a single forum and body of law to govern disputes. Plaintiffs have not identified any fundamental unfairness of having New Jersey law govern, nor is there any reason to believe that New Jersey law is less fair than Louisiana law. To the contrary, the plaintiffs actively and

19

specifically seek to apply New Jersey law to their malicious prosecution claims because New Jersey law may provide a remedy that Louisiana does not: punitive damages.  Both Louisiana and New Jersey recognize the presumptive validity of forum selection clauses, and enforcement of the forum selection clause in this matter promotes the legitimate expectations of the parties.  Thus, because the irrefutable evidence shows that Jeremy Deshotels (through the limited liability company he created, Giftopia, LLC) used the CardCash website, which *required* clicking off on the box conceding agreement to the CardCash Terms of Service, and because the Jeremy Deshotel cannot overcome the presumption of enforcement of the clause in this case, the undersigned concludes that the forum selection clause in this matter is enforceable against him.

Furthermore, the undersigned concludes that all of Jeremy Deshotel's claims arise out of his transactions with CardCash.  The fundamental basis for all of Jeremy's claims against CardCash is that it falsely accused Jeremy Deshotel/Giftopia of selling CardCash gift cards with insufficient value and/or not providing CardCash with the gift cards it purchased.  These transactions about which CardCash allegedly provided false information occurred only with use of the CardCash website, which required agreement to the Terms of Service for each transaction.  In *Braspetro Oil Serv. Co. v. Modec (USA)*, 240 Fed.Appx. 612, 616 (5th Cir. 2007), the court held in an unpublished decision that the forum selection

clause at issue in that case applied to "solve any dispute or controversy arising from the execution of the Contract. . ." Here, all of Jeremy Dehotel's claims against CardCash arise out of his transactions with CardCash, which required the use of the website and agreement to the Terms of Service. Therefore, all of Jeremy Deshotel's claims are subject to transfer. Thus, as the forum selection clause in this case provides that the claims brought by Jeremy Deshotel be brought in New Jersey, the undersigned finds that all of Jeremy Deshotel's claims must be transferred to the United States District Court for the District of New Jersey.

CardCash also seeks to transfer the claims of Courtney Deshotel to New Jersey. Courtney Deshotel argues that she was not a member of Giftopia and she is, therefore, not bound by the forum selection clause. CardCash responds that Courtney Deshotel is similarly bound by the CardCash Terms of Service despite her allegations that she was a non-signatory to the agreement under the principles of agency, third-party beneficiary and/or direct benefits estoppel.

Courts have deemed a third party's conduct to be "closely related" to a contractual relationship or dispute – and thus bound the third parties to forum selection clauses – in a wide variety of situations. *See, e.g., Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209-10 (7th Cir. 1993) (holding that corporations, owned and controlled by a party signing the contract containing the forum selection clause, may be bound by the clause); *LaRoss Partners, LLC v. Contact 911 Inc*., 874 F. Supp. 2d

147, 154-157 (E.D.N.Y. 2012)(finding that where signatory company and non-signatory company shared officers and directors, agents, and a business address, the parties were closely related for purposes of applying a forum selection clause to the non-signatory); *Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co*., 2007 U.S. Dist. LEXIS 72873, *20-*23, 2007 WL 2891981, at *8 (N.D.N.Y. Sept. 28, 2007) (determining an insurer/subrogee relationship with a party allowed for application of a forum selection clause to a non-signatory); *Affiliated Mortg. Prot., LLC v. Tareen*, 2007 U.S. Dist. LEXIS 5106, *9-*13, 2007 WL 203947, at *4 (D.N.J. Jan. 23, 2007) (holding that where a third party's conduct is closely related to the contractual relationship or the contractual dispute and where the third party enjoys financial benefit from the contract, the forum selection clause applies to the third party).

In the instant case, there is no allegation before the Court that Courtney Deshotel was a member of Giftopia or that she was involved in the business in any way or used the CardCash website to transact business with CardCash.  CardCash argues that, if Courtney Deshotel has a cause of action against CardCash, which is contested, her claims exist solely because of the transactions by Jeremy Deshotel with CardCash.  Despite these arguments, it is unclear to the Court whether and to what extent Courtney Deshotel may have benefitted from the transactions between Giftopia and CardCash.  It is undisputed, however, that Courtney Deshotel was not

a member of Giftopia, and there is no demonstrable benefit to her sufficient to warrant the imposition of the forum selection clause over her claims. Therefore, the undersigned finds that the motion to transfer Courtney Deshotel's claims should be denied. Notwithstanding the foregoing, however, the undersigned finds that Courtney Deshotel's claims should be dismissed, as follows.

## B.    Motion to Dismiss Pursuant to Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqba*l, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id*. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint

must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

Courtney Deshotel alleges that CardCash is liable to her and Jeremy for detrimental reliance, malicious prosecution under 42 U.S.C. 1983, false imprisonment and malicious prosecution under Louisiana law, and malicious prosecution under New Jersey law. Courtney Deshotel's claims are subject to dismissal for the following reasons.

### 1. False Imprisonment

As an initial matter, the undersigned notes that Courtney Deshotel has abandoned her false imprisonment claims, as no claim for false imprisonment is alleged in the Amended Complaint. Indeed, plaintiffs acknowledge in their response to the motion to dismiss that they are not pursuing a claim for false imprisonment against any party. Considering the foregoing, the motion to dismiss the plaintiffs'

false imprisonment claim is DENIED AS MOOT, as no such claim is pending at this time.[8]

## 2. Malicious Prosecution

The plaintiffs allege several claims of malicious prosecution, against various defendants, and under different bodies of law.  It is unclear whether the plaintiffs allege their malicious prosecution claim against CardCash under Louisiana or New Jersey.  Regardless, the plaintiffs' fail to state a claim under either of these bodies of law.  Under Louisiana law, [a]ctions for malicious prosecution are disfavored and a clear case must be established." *Graham v. Foret*, 818 F. Supp. 175, 177 (E.D. La. 1992), *citing Jones v. Soileau,* 448 So. 2d 1268 (La. 1984); *Johnson v. Pearce,* 313 So. 2d 812 (La. 1975).  To state a claim for malicious prosecution under Louisiana law, the plaintiff must prove the following six elements: (1) the commencement or

---

[8] In any event, any claim for false imprisonment would be time-barred, as argued by the defendants, regardless of whether Louisiana or New Jersey law applies to the claim.  All three states apply a one-year prescriptive period to claims for false imprisonment or false arrest, which accrues on the date of the arrest. *See Hobson v. Prudhomme*, 2019 U.S. Dist. LEXIS 4297, at *10 (W.D. La. Jan. 8, 2019) ("In Louisiana, delictual actions, including claims for . . . false imprisonment and the like, are subject to a liberative prescription period of one year."); *Thomas v. Gryder*, 2018 U.S. Dist. LEXIS 148743, at *7 (M.D. La. Aug. 30, 2018) ("[T]he one-year period in which Plaintiff was required to bring his state law claims began to run on the date Plaintiff was allegedly 'falsely imprisoned.'"); *Tassin v. Jones*, 2001 U.S. Dist. LEXIS 13267, at *4 (E.D. La. Aug. 17, 2001) ("Louisiana provides a one year prescriptive period for torts such as false arrest beginning on the date of the arrest.").  *See also Waselik v. Twp. of Spara*, 2017 U.S. Dist. LEXIS 76646, at *16 n.3 (D.N.J. May 18, 2017).

Here, plaintiffs allege there were arrested on September 28, 2016.  Thus, at the latest, plaintiffs had one year from September 28, 2016, or until September 28, 2017, to sue for false imprisonment under Louisiana or New Jersey law. But they did not sue until March 23, 2019. *R. 1*. Therefore, to the extent they allege a false imprisonment claim, it is time-barred.

continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) a bona fide termination of the original proceeding in favor of the present plaintiff; (4) the absence of probable cause for the original proceeding; (5) malice on the part of the present defendant in the original proceeding; and (6) damage to the present plaintiff. *Jones,* 448 So. 2d at 1271.[9]

Defendants argue Courtney Deshotel fails to plead the necessary facts against CardCash to establish the following elements of a malicious prosecution claim: (2) its legal causation by CardCash in the original proceeding; and (5) malice on the part of CardCash in the original proceeding. The undersigned agrees.

The jurisprudence is clear that a private individual or entity who reports suspected criminal activity to the police is not liable for malicious prosecution under Louisiana law if law enforcement's independent actions and investigation break the

---

[9] To state a claim for malicious prosecution under New Jersey law, the plaintiff must prove: "(1) a criminal action was instituted by this defendant against this plaintiff; (2) the action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." *See LoBiondo v. Schwartz*, 970 A.2d 1007, 1023, 199 N.J. 62, 91 (N.J. 2009) ("Our longstanding reluctance to permit parties to utilize these causes of action springs from our recognition that they carry with them the significant potential for abuse."). Defendants argue the plaintiffs in this matter fail to allege facts against CardCash sufficient to establish: (1) a criminal action was instituted by CardCash against plaintiffs; and (2) the action was motivated by malice.

For all of the reasons that Courtney Deshotel's malicious prosecution claim fails to state a claim under Louisiana law, her claim of malicious prosecution under New Jersey law must fail. Reference is made to the portion of this Ruling discussion application of Louisiana law; the same facts and analysis is applicable to the claims under New Jersey law.

chain of causation between the citizen's complaint and the resulting arrest. *See, e.g., Adams v. Harrah's Bossier City Inv. Co.,* 948 So. 2d 317, 320–22 (La. App. 2nd Cir. 1/10/07), (finding that although the defendants reported suspected theft to the police and viewed security footage alongside the police, the police's viewing of the security footage was a sufficiently independent investigation to break the chain of causation because the defendants' involvement "d[id] not rise to such a level as to prevent the police investigation from being independent of [defendant's] own suspicions"). Indeed, Louisiana courts have found causation lacking in malicious prosecution cases when the defendant reports facts to the authorities in good faith, and an independent decision is made to bring criminal charges. *See Williams v. Higbee Lancoms, LP*, NO. 15-2486 SECTION "L" (5), 2016 U.S. Dist. LEXIS 24426, at *12 (E.D. La. Feb. 26, 2016) ("Here, Mr. Dennis made a statement to the Jefferson police in good faith and, as such, there is no case for malicious prosecution."); *Duncan*, 2009 U.S. Dist. LEXIS 140894, at *9 ("This charge was the result of Officer D'Amato's intervening independent investigation. 'As such, the independent investigation by the police breaks [the] legal causation' required for a malicious prosecution claim"); *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 690 n.20 (La. 2006) (finding that the restaurant was not liable for malicious prosecution when the police conducted an independent investigation into counterfeit money); *Banks v. Brookshire Bros.*, 640 So. 2d 680, 682 (La. App. 3 Cir. 6/1/94) (holding

defendants were not liable for malicious prosecution based on merely reporting their observations to police officers, who detained the plaintiff, conducted their own observations, and arrested him; "any inadequacies in the investigation [we]re not the responsibility of the defendants"); *Republic Fire & Cas. Ins. Co. v. Charles*, 2018 U.S. Dist. LEXIS 2152, at \*13-14 (E.D. La. Jan. 4, 2018) (finding that the plaintiff failed to state a claim for malicious prosecution against the defendant where the only supporting allegations were that the defendant provided information to the authorities, which then led to the arrest warrant being issued against the plaintiff, and thereafter, the charges against him were dismissed). *See also Bohn v. Miller*, 189 So. 3d 592, 598 (La. App. 3 Cir. 4/6/16) (court found plaintiff failed to satisfy element of causation on malicious prosecution claim against the defendant — a private individual — who reported suspected crime to police because police obtained the information from other sources, executed an arrest warrant, and proceeded to charge the plaintiff with the crime; defendant's "involvement ceased after he made his report to the police.").

In the instant case, the Amended Complaint does not allege that anyone from CardCash had any contact with law enforcement concerning Courtney Deshotel or that anyone from CardCash reported anything directly to the City of Scott, Detective Lege. Rather, the Amended Complaint alleges that <u>PayPal</u> conducted an investigation after being provided allegedly "false" and/or "stale" information by

CardCash, and then relayed that information to the Scott Police Department, which allegedly used the information in applying for and obtaining the arrest warrant and search warrants in question.

Additionally, it is clear that the independent actions and investigations of Detective Lege, the Scott Police Department, and Judge Duplantier broke the chain of causation between CardCash's reports to PayPal and Courtney Dehotel's arrest. The arrest warrants in this matter were applied for by Detective Lege of the City of Scott and subsequently issued by Judge Duplantier of the 15th Judicial District Court, a neutral third party. Thus, CardCash did not arrest or issue the arrest warrants for Courtney Deshotel's arrest. The City of Scott, acting through its investigators, selected the charges to be filed against Courtney Deshotel, based upon their own findings and investigation. Additionally, the City of Scott Police Department obtained information from multiple sources regarding Courtney Dehotel's alleged activities and conducted its own independent investigation into these activities before proceeding to apply for warrants and later to arrest Courtney Deshotel. Detective Lege attested that the Scott Police Department considered Capital One bank statements and PayPal account transactions to support affidavits for the warrant for Courtney Deshotel's arrest. Finally, a neutral judge -- Judge Duplantier -- made the independent decision to issue the search warrants for plaintiffs' home and vehicles based on his independent consideration of the evidence.

Considering the foregoing, after a review of the allegations and evidence presented thus far, the Court finds that CardCash's involvement ceased after reporting plaintiffs' activities to PayPal and the actions of Lege, the Scott Police Department, and Judge Duplantier sufficiently broke the chain of causation between CardCash's actions and Courtney Deshotel's arrest.

Additionally, the plaintiffs fail to allege that CardCash acted with malice. Under Louisiana law, "[m]alice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to 'tie up the mouths' of witnesses in another action, or as an experiment to discover who might have committed the crime." *Williams v. Higbee Lancoms, LP*, 2016 U.S. Dist. LEXIS 24426, at *13 (E.D. La. Feb. 26, 2016). In this case, the First Amended Complaint lacks any of the foregoing allegations as to CardCash and only makes conclusory statements that CardCash acted with malice. The Amended Complaint also fails to identify any motive on the part of CardCash for reporting allegedly false allegations. Rather, in the Amended Complaint plaintiffs acknowledge that the gift cards Giftopia sold to CardCash did not all contain the value they were represented to have and plaintiffs, therefore, agreed to make monthly installments to repay the deficiencies. In fact, CardCash initiated litigation in New Jersey regarding the

deficiencies and obtained a judgment. These facts belie an allegation of malice against CardCash.

For the foregoing reasons, the undersigned finds that Courtney's claims for malicious prosecution against CardCash, under either Louisiana or New Jersey law, fail to state a claim, and dismissal of these claims is appropriate.

### 3. Civil rights claims

It appears Courtney Deshotel has included a Section 1983 claim against all defendants – including CardCash –in her Amended Complaint. The allegations fail to state a claim, however, because Section 1983 claims can only be brought against defendants acting under color of state law. *See James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008); *see also Bui Phu Xuan v. Fort Worth Star-Telegram*, 277 F. App'x 452, 454 (5th Cir. 2008) ("Put another way, acts of private parties, such as the Star-Telegram, 'even if wrongful, do not fall under the ambit of the' Constitution."); *Owens v. Stalder*, 2012 U.S. Dist. LEXIS 68008, at *21-22 (W.D. La. Apr. 16, 2012) ("To prove false imprisonment under Section 1983, the plaintiff must show that the defendant, while acting under color of law, deprived him of a right secured by the Constitution and laws of the United States.") (emphasis added); *Donley v. Hudson's Salvage, L.L.C.*, 2011 U.S. Dist. LEXIS 136908, at *47 (E.D. La. Nov. 29, 2011) ("Donley must show both a violation of a right secured by the

Constitution or laws of the United States and that the deprivation was committed by a person acting under color of state law.").

Generally, private individuals are not considered to act under the color of state law. *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005). The only basis for which private action may be deemed state action is when the defendant's conduct is "fairly attributable to the State." *Priester v. Lowndes County*, 354 F.3d 414, 423 (5th Cir. 2004), *quoting Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). To establish fair attribution, the plaintiff must show: (1) that the deprivation was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may fairly be said to be a state actor. *Id., citing Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988). The Fifth Circuit has held that "a private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority." *Daniel*, 839 F.2d at 1130. Moreover, police reliance in making an arrest on information given by a private party does not make the private party a state actor. *Id., citing Hernandez v. Schwegmann Brothers Giant Supermarkets, Inc.*, 673 F.2d 771, 772 (5th Cir. 1982) (emphasis added). Indeed, "[t]he execution by a private party of a sworn complaint, which forms the basis for an arrest, is, without more, not sufficient to make that party's acts state action." *Id.* (emphasis added).

In this case, Courtney Deshotel does not make any specific factual allegations that CardCash "acted under color of state law." However, the claim was included in the original Complaint and the Amended Complaint.  To the extent that such claim remains pending, the undersigned finds that Courtney Deshotel cannot state a claim for relief against CardCash on her Section 1983 claim, because CardCash is not a state actor for the purposes of this claim and is not alleged to have been acting as a state actor.  Accordingly, any Section 1983 claim made by Courtney Deshotel against CardCash should be dismissed.

### 4.  Promissory Estoppel or Detrimental reliance

To the extent that Courtney Deshotel also alleges a claim against CardCash for promissory estoppel or detrimental reliance, such claim is also subject to dismissal.  Plaintiffs' Amended Complaint references Louisiana Civil Code Article 1967 or New Jersey Law in support of the claims for detrimental reliance/promissory estoppel.  In Louisiana, "[t]o establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Luther v. IOM Company, LLC,* 130 So.3d 817, 825 (La. 2013), citing *Suire v. Lafayette City-Parish Consolidated Government,* 907 So.2d 37, 59 (La. 2005).  "Estoppels are not favored in our law; therefore, a party cannot avail himself of that doctrine if he fails to prove all essential elements of the plea." *Id.,*

33

citing *Wilkinson v. Wilkinson,* 323 So.2d 120, 126 (La. 1975). In New Jersey, the plaintiffs must prove four elements to establish the doctrine of promissory estoppel. *Great Falls Banks v. Pardo,* 622 A.2d 1353, 1359, n. 9 (N.J.Super. 1993). "First, the promisor must make a clear and definite promise. Second, it must be made with the expectation that the promisee will rely on it. Third, the promisee must reasonably rely on the promise. Finally, the promisee must incur a detriment in reliance thereon." *Id.,* citing *The Malaker Corp. v. First Jersey National Bank,* 395 A.2d 222, 230 (N.J. Super. App. Div. 1978).

In this case, the claims against CardCash for detrimental reliance/promissory estoppel pertain solely to Jeremy Deshotel and Giftopia. Paragraph 48 of the Amended Complaint specifically points to allegations contained in paragraphs 16 and 17 for the factual basis for the claims of detrimental reliance and promissory estoppel. Those paragraphs detail alleged communications between Jeremy Deshotel and Joseph Blaustein. There are no facts set forth in the Amended Complaint which support that any communications ever took place between Courtney Deshotel and anyone representing CardCash. Additionally, the Amended Complaint sets forth no facts that CardCash engaged in any conduct geared toward Courtney Deshotel which constituted a representation upon which Courtney Deshotel detrimentally relied. Moreover, Courtney Deshotel affirmatively indicates that she was not involved in the Giftopia business. Simply put, CardCash cannot have made any promises to

Courtney Deshotel, and she could not have detrimentally relied on any statements, when Courtney Deshotel and CardCash had no communications or interactions. Accordingly, Courtney fails to state any claim against CardCash for detrimental reliance, and this claim should be dismissed.

## IV.    CONCLUSION

Considering the foregoing,

**IT IS RECOMMENDED** that the Motion to Sever and Transfer Venue Pursuant to 28.U.S.C. 1404(a) and Fed. R.Civ. P. 21 or alternatively, to Dismiss for Failure to State a Claim [Doc. 62] be GRANTED IN PART AND DENIED IN PART.  IT IS RECOMMENDED that the motion to sever and transfer Jeremy Deshotel's claims be GRANTED, and that Jeremy's claims be severed and transferred to the United States District Court for the District of New Jersey.

IT IS FURTHER RECOMMENDED that the Motion to Sever and Transfer Courtney Deshotel's claims be DENIED, but that the Motion to Dismiss Courtney Deshotel's claims for Failure to State a Claim be GRANTED, and all of Courtney's claims against CardCash be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 24th day of August, 2020 at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE